CHANDLER, J.,
for the Court.
¶ 1. Carla Ann Crenshaw Street and Stephen Edward Street were divorced on the ground of irreconcilable differences in the Chancery Court of Madison County. The chancellor entered a final judgment of divorce on August 16, 2004. As part of that judgment, the chancellor awarded primary physical and legal custody of the Streets’ two children to Carla and ordered Stephen to pay $500 per month in alimony. On October 25, 2004, the chancellor granted Stephen’s motion for reconsideration and, on December 9, 2004, entered an amended judgment awarding primary physical and legal custody to Stephen and revoking Carla’s alimony award.
¶ 2. Carla appeals, arguing that the chancellor erred (1) by hearing Stephen’s motion for reconsideration because it was untimely filed; (2) by conducting an erroneous Albright analysis that placed inordinate emphasis on one factor; and (3) by revoking Carla’s award of alimony.
¶ 3. Finding no error, we affirm.
FACTS
¶ 4. The Streets were married on June 25, 1988, and both embarked on careers as church pastors. They lived in.a house in Madison, Mississippi. The Streets had twin boys, Ragan Crenshaw Street and Riley Stratton Street, who were born on September 24, 1998. The Streets constructively separated after they had a physical altercation on August 10, 2003, and Carla filed a complaint for divorce on *1006 September 8, 2003. Stephen moved out of the marital domicile in December 2003. At that time, the twins were five years old.
¶ 5. A guardian ad litem was appointed in December 2003. As reflected by a series of agreed orders, the parties agreed temporarily to share joint physical and legal custody of the twins until the divorce hearing. On May 14, 2004, Stephen filed a counterclaim for divorce and custody. On June 7, 2004, Stephen filed a petition for emergency temporary relief, alleging that Carla had moved Paul Zinn, Sr., into the marital home, and that Zinn was an unre-covered alcoholic with a violent criminal past. Stephen prayed for sole legal and physical custody of the twins. On June 16, 2004, an agreed order was entered providing for joint custody, but restricting Carla from exposing the children to Zinn during her visitation.
¶ 6. The divorce hearing occurred on June 23, 2004. At the hearing, it was established that Carla had met Zinn at a church dinner at the end of April 2004. At that time, Zinn was participating in inpatient treatment for alcoholism. Carla embarked on a sexual relationship with Zinn and spent portions of the weekend of April 30, 2004, in a hotel room with Zinn. At that time, Zinn was temporarily absent from the treatment center on a weekend pass. After the weekend, Zinn was discharged from treatment for violating a policy against romantic relationships. Carla testified that, because Zinn had nowhere to live, she allowed him to move into the marital domicile. Zinn sometimes slept in Carla’s bedroom during Carla’s visitation with the twins. In May 2004, Carla became engaged to be married to Zinn. Around June 13, 2004, Carla and Zinn traveled to Wisconsin to visit Zinn’s family. While there, Zinn was arrested pursuant to a warrant for failure to pay child support. Carla testified that she had broken off her relationship with Zinn due to his incarceration in Wisconsin.
¶ 7. In a June 2004 deposition, Zinn admitted that he was an alcoholic and had consumed one six-pack of beer per day and one pint of whiskey per week since being discharged from treatment. He was unemployed. He further admitted that, during his lifetime, he had been arrested ten to twelve times, including four times in the past five years. He stated that he had spent approximately five years imprisoned for various crimes. He admitted that one of his prison sentences was extended by five months because he had gotten into fights. He further admitted to having hit a former girlfriend during a domestic quarrel.
¶ 8. After weighing the Albright factors, the chancellor awarded legal and physical custody of the children to Carla, with visitation for Stephen. The chancellor’s award was based, in part, on the guardian ad litem’s identification of Carla as the person with the best parenting skills and on the cessation of Carla’s relationship with Zinn. The chancellor strongly admonished Carla never to allow Zinn in the presence of the children and never to have any overnight male visitors during her time with the children. As Carla was the custodial parent, the chancellor awarded the marital domicile to Carla in the property division. The chancellor ordered Stephen to pay Carla $662 per month in child support and $500 per month in alimony.
¶ 9. On July 20, 2004, Stephen filed a motion for reconsideration. On July 30, 2004, he filed a motion for a new trial along with the affidavit of one of Carla’s neighbors stating that it appeared that Zinn had resumed living with Carla and the children at the marital domicile. On August 16, 2004, the court entered a final judgment of divorce setting out its holdings from the bench opinion. On August *1007 19, 2004, the chancellor, finding that irreparable harm could result if the children remained in Carla’s care, awarded full temporary custody to Stephen.
¶ 10. A hearing occurred on October 25, 2004. At the hearing, it was stipulated that Zinn had resumed living at the marital domicile. Zinn admitted that, since his return to Mississippi, he had been arrested and charged with public drunkenness. Carla admitted that Zinn had been living with her since July 2004. Carla testified that she had allowed Zinn to return in violation of the court order because of her and Zinn’s financial situation, because she, Zinn, and the children had formed a loving family, and because she thought the chancellor’s judgment was based on false information about Zinn, She testified that it would be unfair if the chancellor made her “choose between the kids and Zinn” by granting her custody conditional on keeping Zinn away from the children. Carla stated that she could “probably” abide by such a ruling, but would seek to have it overturned.
¶ 11. The chancellor granted Stephen’s motion for reconsideration, and, on December 9, 2004, entered a judgment amending the prior order of divorce. In the amended judgment, the chancellor reconsidered her Albright analysis and awarded physical and legal custody to Stephen, with Carla to have daytime visitation on two days per week and on certain holidays. The daytime visitation was to continue until such time when Carla could demonstrate that she was willing and able to provide a safe environment for the children for overnight visitation. Because Stephen was to be the custodial parent, the chancellor awarded him the marital domicile and ordered Carla to pay him $276 per month in child support. The chancellor revoked the prior award of alimony to Carla.
STANDARD OF REVIEW
¶ 12. This Court adheres to a limited standard of review in domestic relations matters. Pearson v. Pearson, 761 So.2d 157, 162(1114) (Miss.2000). When the chancellor’s findings are supported by substantial evidence, we will not reverse unless the chancellor abused her discretion, was manifestly wrong, clearly erroneous, or applied an erroneous legal standard. Chapel v. Chapel, 876 So.2d 290, 292(¶ 8) (Miss.2004). We may disturb a chancellor’s findings of fact only when there is no substantial, credible evidence in the record to support those findings. Copeland v. Copeland, 904 So.2d 1066, 1074(¶ 30) (Miss.2004). Moreover, we view the facts of a divorce decree in the light most favorable to the appellee. Fisher v. Fisher, 771 So.2d 364, 367(¶ 8) (Miss.2000).
LAW AND ANALYSIS
I. WHETHER THE CHANCELLOR ERRED IN HEARING STEPHEN’S UNTIMELY FILED MOTION FOR RECONSIDERATION.
¶ 13. Carla argues that the chancellor erred by considering Stephen’s motion for reconsideration because it was untimely filed. This assignment of error necessitates a discussion of the procedural history of this case subsequent to the divorce hearing. On June 23, 2004, the day of the hearing, the chancellor rendered a bench opinion and indicated that a final judgment would be forthcoming. On July 20, 2004, Stephen filed a “Motion for Reconsideration.” This motion requested reconsideration of the bench opinion based on the facts adduced at the hearing. On July 30, 2004, Stephen filed a “Motion for a New Trial” requesting the opportunity to present evidence that Zinn had returned to Carla’s home after the hearing. On August 16, 2004, the chancellor entered a final judgment that adhered to its *1008 bench opinion. The same day, Stephen filed a petition for contempt, modification, and emergency temporary relief based on Zinn’s return. Thereafter, the chancellor granted temporary custody to Stephen.
¶ 14. Stephen brought his motions on for hearing on October 25, 2004. The chancellor stated that she was granting Stephen’s motion for reconsideration and that she would hear the evidence concerning Zinn’s return. Three witnesses testified on behalf of Carla, including Zinn, Carla, and a witness attesting to Zinn’s character. On December 9, 2004, the chancellor entered an “Amended Judgment” revising her original findings of fact and conclusions of law.
¶ 15. A motion for reconsideration requesting a change in the result of a bench trial has been deemed to be a motion to alter or amend the judgment pursuant to Mississippi Rule of Civil Procedure 59(e). In re Estate of Stewart, 732 So.2d 255, 257(¶ 8) (Miss.1999). Carla asserts that the amended judgment was the product of the chancellor’s grant of Stephen’s motion for reconsideration, which she contends was untimely filed under Rule 59(e). However, the conduct of the October 25, 2004 hearing indicates that the chancellor also granted Stephen’s Rule 59(a) motion for a new trial because the chancellor reopened the judgment, took additional testimony and then entered an amended judgment with revised findings of fact and conclusions of law. See M.R.C.P. 59(a) (“[o]n a motion for a new trial in an action without a jury, the court may open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make findings and conclusions, and direct the entry of a new judgment”).
¶ 16. The timing of post-trial motions under Rule 59(a) and Rule 59(e) is the same; such motions must be made “not later than ten days after the entry of judgment.” M.R.C.P. 59(b); 59(e). Both Stephen’s Rule 59(e) motion for reconsideration and his Rule 59(a) motion for a new trial were filed after the chancellor’s bench opinion but before the final judgment was entered. Carla argues that Stephen’s motion for reconsideration was untimely under Rule 59(e) because it was filed before the final judgment was entered rather than within ten days after the entry of the final judgment. For that reason, she contends that the motion should not have been considered by the chancellor.
¶ 17. It appears that the question of whether a Rule 59(e) motion is timely if filed before the entry of a final judgment is one of first impression in Mississippi. However, “[t]he Mississippi Rules of Civil Procedure are patterned after the Federal Rules of Civil Procedure, and we have looked to the federal interpretations of our state counterparts as persuasive authority.” Hartford Cas. Ins. Co. v. Halliburton Co., 826 So.2d 1206, 1215(¶ 32) (Miss.2001). Federal authority is settled that a Rule 59 motion is timely though filed after the court makes findings of fact but before the entry of a final judgment. See 11 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure: Civil 2d § 2812 at 82 n. 44 (1973).
¶ 18. As previously stated, the timing of a Rule 59(e) motion to alter or amend a judgment and a Rule 59(a) motion for a new trial is identical; both motions must be made “not later than ten days after the entry of judgment.” M.R.C.P. 59(b); 59(e). In Hilst v. Bowen, 874 F.2d 725, 726 (10th Cir.1989), the Tenth Circuit observed that “courts and commentators generally agree that this ten-day limit sets only a maximum period and does not preclude a party from making a Rule 59 motion before a formal judgment has been *1009 entered.” The Hilst court found that the appellant’s motion for reconsideration was timely though made after the lower court rendered a memorandum and order but before the court entered a final judgment. Id. In concluding that a motion for a new trial filed before entry of judgment was timely, the Fifth Circuit stated that “[the] language [of Rule 59(b) ] does not explicitly require that a motion for new trial be made after judgment is entered, and it has not been interpreted to include this requirement.” Greater Houston Ch. of the ACLU v. Eckels, 755 F.2d 426, 427 (5th Cir.1985); see also McCulloch Motors Corp. v. Oregon Saw Chain Corp., 245 F.Supp. 851, 853 (S.D.Cal.1963) (finding that, by the rule’s use of the words “shall” and “not later than,” the ten days after the entry of judgment established an outside, not an inside, limit for the timing of a motion for a new trial). Based on this authority, we find that Stephen’s Rule 59(e) motion was timely filed after the chancellor’s rendition of her bench opinion, though before the final judgment was entered.
II. THE CHANCELLOR’S ALBRIGHT ANALYSIS WAS ERRONEOUS AND PLACED INORDINATE EMPHASIS ON ONE FACTOR, ALLOWING THAT ONE FACTOR TO INAPPROPRIATELY SKEW THE CUSTODY AWARD.
¶ 19. In the amended judgment, the chancellor reconsidered several of the Al-bright factors and concluded that the best interest of the children required Stephen to have primary custody of Ragan and Riley. Carla argues that the chancellor placed undue weight on her relationship with Zinn. She contends that the chancellor should have weighed several Albright factors in her favor and should have awarded her primary custody of the children.
 ¶ 20. The polestar consideration in child custody cases is the best interest and welfare of the child. Albright v. Albright, 437 So.2d 1003, 1005 (Miss.1983). In order to arrive at a custody arrangement that is in the child’s best interest, the chancellor must make specific findings on each of the factors listed in Albright: (1) age, health and sex of the child; (2) determination of the parent that had the continuity of care prior to the separation; (3) which has the best parenting skills and which has the willingness and capacity to provide primary child care; (4) the employment of the parent and responsibilities of that employment; (5) physical and mental health and age of the parents; (6) emotional ties of parent and child; (7) moral fitness of the parents; (8) the home, school and community record of the child; (9) the preference of the child at the age sufficient to express a preference by law; (10) stability of home environment and employment of each parent; and (11) other factors relevant to the parent-child relationship. Id.
¶ 21. On review of the chancellor’s custody award, this Court looks to the evidence and testimony regarding each Al-bright factor to determine whether the chancellor’s ruling was supported by the record. Hollon v. Hollon, 784 So.2d 943, 947(¶ 13) (Miss.2001). Because the chancellor was in the best position to evaluate the factors pertaining to the best interest of the child, we will not substitute our judgment for that of the chancellor. Copeland, 904 So.2d at 1074(¶ 30). We may reverse only if the chancellor’s findings were not supported by substantial evidence, were manifestly wrong, clearly erroneous, or an erroneous legal standard was applied. Id.

Age, health, and sex of the children

¶ 22. The chancellor found that Ragan and Riley were both healthy, active, *1010 male five-year-olds at the time of the trial, and that this factor did not weigh in favor of either party. Carla argues that, under the tender years doctrine, the chancellor should have found that this factor favored her as the boys’ mother.
¶ 23. The tender years doctrine is not a rule, but merely a presumption that, “in all cases where any child is of such tender age as to require the mother’s care for its physical welfare, it should be awarded to her custody, at least until it reaches that age and maturity where it can be equally well cared for by other persons.” Law v. Page, 618 So.2d 96, 101 (Miss.1993) (citing Johns v. Johns, 57 Miss. 530 (1879)). Though the tender years doctrine has been weakened, it is still a viable consideration in custody determinations. Copeland, 904 So.2d at 1075(¶ 35). But, while the tender years presumption is an important consideration in determining custody, it is only one factor out of many in determining the custody arrangement that is in the best interest and welfare of the child. Id.
¶ 24. The chancellor discussed the tender years doctrine and found that there was no compelling reason to favor Carla. Indeed, the record showed that both parents actively cared for Ragan and Riley, and that Stephen was adept at caring for the boys’ physical needs. It is apparent from the evidence that, at age five, the boys were not especially dependent on their mother for their physical welfare. Therefore, we find that the chancellor’s decision was not manifestly erroneous. As in Copeland, we note the practical consideration that Ragan and Riley are now over seven years old and the tender years doctrine would no longer apply. Id.; Gutierrez v. Bucci, 827 So.2d 27, 31(¶ 17) (Miss. Ct.App.2002).

Continuity of care

¶25. The chancellor found that Carla had provided the majority of the children’s care before the parties separated and that this factor slightly favored her. Carla does not take issue with this finding.

Best parenting skills

¶ 26. In her bench opinion, the chancellor found that Carla had the best parenting skills based on the report of the guardian ad litem and the testimony. But in the amended judgment, the chancellor found that she had erroneously placed too much weight on the guardian ad litem’s report. On re-examination of the evidence, the chancellor found that Carla had exhibited bad judgment and poor parenting skills by becoming romantically involved with a practicing alcoholic and moving him into her home. The chancellor found that this factor favored Stephen.
¶ 27. Carla argues that the chancellor erred by placing weight on Carla’s decision to become involved with Zinn because that decision impacted Carla’s personal life and was not indicative of her skills as a parent. We disagree. Certainly, Carla’s decision to move Zinn into her children’s home was a decision that necessitated an exercise of parental judgment. The record fully supports the chancellor’s finding that this exercise of parental judgment was a poor one. In her final report, the guardian ad litem opined that Zinn presented a clear and present risk to the children, and that Carla had exhibited a “total lack of judgment” in moving Zinn into her home. The guardian ad litem stated that Carla “adamantly and repeatedly refused to place her children’s best interest ahead of her relationship with this man.” The guardian ad litem further stated that she had favored Carla as the custodial parent until Carla became involved with Zinn in May 2006. Subsequent to that date, the guardian ad *1011 litem believed that Stephen would be the better custodial parent.
¶ 28. The chancellor’s weighing of this factor in favor of Stephen was supported by substantial evidence.

Which parent has the willingness and capacity to provide primary child care

¶ 29. In her bench opinion, the chancellor found that this factor slightly favored Carla. But in the amended judgment, the chancellor found that this factor favored Stephen because
there is a question as to whether [Carla] has a willingness to care for the minor children. It appears to this [e]ourt that [Carla] has put Mr. Zinn before the welfare of her children and may be willing to sacrifice her minor children for him. At trial, there was some testimony that [Carla] had made a comment to the effect that God may have called her to offer up her children like Abraham offered up Isaac. The [c]ourt did not place much stock in her statement during the original hearing. [Carla’s] testimony at the hearing on the motion for reconsideration has caused this [c]ourt to place more weight on the comment. [Carla] testified that she allowed Mr. Zinn to move back into her home as soon as he was released from jail in Wisconsin, and that she had done this despite of [sic] the [c]ourt’s order prohibiting her [from] exercising] visitation in the presence of Mr. Zinn. [Carla] further testified that she did not know if she could abide by any order from this [c]ourt directing her not to bring the children in contact with Mr. Zinn.
¶ 30. The evidence cited in the chancellor’s consideration of this factor was supported by the record. Carla contends that the chancellor erroneously overlooked her capacity to care for the children due to her work schedule as a public schoolteacher. We find that, in light of the evidence concerning Carla’s questionable willingness to care for the children, the chancellor did not manifestly err in finding that this factor favored Stephen.

Employment of the parent and responsibility of that employment

¶ 31. The evidence established that Stephen’s job required him to occasionally travel, while Carla’s teaching job allowed her work schedule to coincide with the time the boys would be in school. Stephen testified that the boys stayed with his parents when he traveled, or that he brought them along on trips. The chancellor found that this factor favored Carla, and this finding is not challenged on appeal. Stability of home environment and employment of each parent
¶ 32. At the time of the trial, Stephen worked as a pastor, a job which he had held for several years. Carla had recently lost her job as a pastor and obtained a new job as a schoolteacher. In her bench opinion, the chancellor found that this factor weighed equally between the parties because both parents’ employment seemed to be stable. But in the amended judgment, the chancellor re-examined the evidence and found that this factor favored Stephen due to his much longer continuity of employment. In her amended judgment, the chancellor had the power to reconsider her earlier findings. M.R.C.P. 59(a). The finding that Stephen’s employment was more stable was supported by the evidence that Carla had recently lost her long-term employment and had entered a new field of employment.

Moral fitness of the parents

¶ 33. In her bench opinion, the chancellor weighed this factor equally between Stephen and Carla because, after their separation, both had begun relation *1012 ships with persons of the opposite sex. Carla became involved with Zinn, and Stephen admitted that he had become romantically involved with a woman whom he had exposed to the children. However, Stephen denied ever having had sexual relations with the woman and denied that she had ever spent the night with him. Based on this evidence, in combination with the fact that Carla had commenced a sexual relationship with Zinn and was co-habitating with him in the presence of the children, the chancellor reconsidered her findings and weighed this factor in favor of Stephen.
¶ 34. In her argument that this factor should not have weighed for Stephen, Carla cites evidence of Stephen’s moral unfitness including: that Stephen told Carla that he had romantic feelings for the neighbor, that he once left the children and another child alone in the house; that he exhibited a pattern of lying and manipulation; that he had spanked the children out of anger, and that he had once physically abused Carla in front of the children.[1] We find that the chancellor acted within her discretion in placing more weight upon Carla’s adulterous relationship with Zinn and her ongoing co-habitation with him than upon the evidence surrounding Stephen’s morally unfit behavior. The chancellor’s weighing of this factor in favor of Stephen was supported by substantial evidence.

Conclusion

¶ 35. The chancellor found that the other Albright factors either weighed equally for both parties or were irrelevant due to the children’s age; these findings were not challenged on appeal. Of the factors found to favor either party, the chancellor found that the continuity of care and employment factor favored Carla, while the parenting skills, willingness and capacity, stability, and moral fitness factors favored Stephen. Though the primary reason for the chancellor’s custody determination was Carla’s conduct surrounding Zinn, under these particular facts, that conduct was relevant to the chancellor’s analysis of several of the Al-bright factors. We find that the chancellor carefully weighed each Albright factor and properly exercised her discretion in determining that awarding primary custody to Stephen was in the children’s best interest.
III. IN THE AMENDED FINAL JUDGMENT, THE CHANCELLOR ERRED IN REVOKING CARLA’S AWARD OF ALIMONY.
¶ 36. In the original judgment, the chancellor concluded her property division by awarding Carla $500 per month in periodic alimony. The chancellor’s amended judgment adjusted the property division and revoked the alimony award. Carla argues that the chancellor erred by altering the alimony award without considering the factors from Armstrong v. Armstrong, 618 So.2d 1278, 1280 (Miss.1993).
¶ 37. As the chancellor revoked her earlier decision to award alimony, we do not review the propriety of the initial alimony award. Rather, we review the chancellor’s ultimate decision to deny alimony. The decision to award alimony is largely within the chancellor’s discretion. Gray v. Gray, 562 So.2d 79, 83 (Miss.1990). To determine whether to award permanent periodic alimony, the chancellor must consider the twelve factors enumerated in Armstrong: (1) the parties’ income and expenses; (2) the parties’ health and earning capacities; (3) each party’s needs; (4) each party’s obligations and assets; (5) the *1013 length of the marriage; (6) the presence or absence of minor children in the home, which may require that one or both of the parties either pay, or personally provide, child care; (7) the parties’ age; (8) the parties’ standard of living, both during the marriage and at the time of the support determination; (9) the tax consequences of the spousal support order; (10) fault or misconduct; (11) wasteful dissipation of assets by either party; and (12) any other factor deemed by the court to be “just and equitable” in connection with the setting of spousal support. Armstrong, 618 So.2d at 1280. In determining the alimony award, the chancellor should consider the wife’s reasonable needs and the husband’s right to lead as normal a life as possible with a decent standard of living. Gray, 562 So.2d at 88.
¶ 38. The record reveals that the chancellor considered the Armstrong factors in rendering her initial alimony award to Carla. The chancellor found that both parties were in good health, had doctorate degrees, and had equal earning capacity. Carla’s adjusted gross income was $1,379.98 per month, and Stephen’s adjusted gross income was $3,311.18 per month. Beginning in September 2004, Carla’s pay would increase to $30,000 per year. The chancellor found from Carla’s Rule 8.05 financial statement that, with the award of the marital domicile to Carla and Carla’s childcare expenses, Carla would be unable to maintain herself and the children in their standard of living without an alimony award. In the amended judgment, the chancellor awarded the marital domicile to Stephen in light of her decision to award primary custody of the children to Stephen. The chancellor further found that, under the revised property division, Carla had sufficient income for her maintenance and support without alimony.
¶ 39. On review of a chancellor’s decision regarding alimony, the lack of an on-the-record Armstrong analysis does not warrant reversal unless “the failure to make specific findings of fact and conclusions of law constitutes manifest error.” Godwin v. Godwin, 758 So.2d 384, 387(¶ 11) (Miss.1999). While the chancellor performed an on-the-record Armstrong analysis in her original judgment, the chancellor did not perform a second on-the-record balancing of the factors in her decision to deny alimony. Nonetheless, the original and amended judgments enable our meaningful review of the chancellor’s decision. According to the chancellor’s bench opinion, Carla’s education level and earning potential were equal to Stephen’s, but Carla’s lower paying teaching job enabled her to spend time with the children during her exercise of primary custody. The amended judgment divested Carla of primary custody and the financial responsibilities of the mortgage, home maintenance, and childcare that she was burdened with under the original judgment. It is readily apparent from the original judgment that those financial burdens were the primary reasons for the chancellor’s initial alimony award, and from the amended judgment that the removal of those financial burdens was the primary reason for the denial of alimony. We find no manifest error in the chancellor’s decision.
¶ 40. THE JUDGMENT OF THE CHANCERY COURT OF MADISON COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., SOUTHWICK, IRVING, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR.

. While it was undisputed that the Streets had a physical altercation in front of the children that incited their separation, police reports and the testimony of the parties conflicted as to the level of Stephen’s fault in the incident.