MAXWELL, J.,
 

 for the Court:
 

 ¶ 1. Teresa Darlene Jones (Darlene) appeals the chancery court’s post-trial determination that her ex-husband, George Herbert Mayo III (Herbert), could satisfy Darlene’s equitable distribution award of $36,488.50 with a portion of his retirement, using a qualified domestic-relations order (QDRO), instead of paying cash. She also appeals the denial of her request for interest on her 2005 award.
 

 ¶ 2. At the hearing on Herbert’s motion to reconsider, the chancery court found the omission of a reference to a QDRO in the 2005 divorce judgment was an oversight. The intent of the equitable distribution award was for both Darlene and Herbert to receive an equal share of the martial assets. The marital estate had no cash, and if Herbert were to withdraw $36,488.50 in cash from his retirement, he would lose more than $15,000 in taxes and penalties. Because there were to be no foreseeable tax consequences of the distribution, Herbert’s using a QDRO to transfer $36,488.50 from his retirement to a separate account for Darlene was the only way to achieve the award’s purpose. The chancery court also found, because Herbert had tried to satisfy the award using a QDRO shortly after the divorce judgment was entered, Darlene was not entitled to interest.
 

 ¶ 3. Because the chancery court had the authority under Rule 60(a) of the Mississippi Rules of Civil Procedure to clarify its previous divorce judgment and correct any oversight, we find no error and affirm.
 

 
 *835
 
 FACTS
 

 ¶ 4. Darlene and Herbert divorced on January 24, 2005. While they agreed who should keep most of their marital property, they left the issue of equitable distribution to the chancery court. The majority of the marital property was in retirement accounts. Darlene had a state pension worth $23,000, and Herbert had two ERISA-qualifying accounts, worth $82,449 total. All the assets combined totaled $139,637.
 
 [1]
 

 ¶ 5. Special Chancellor Charles D. Thomas proposed “[dividing this amount equally [so] each party should receive $69,818.50.” He reasoned that “[deducting $33,330.00 in assets [Darlene] is to receive from the agreed value of the personal property already divided would leave her with a deficit of $36,488.50.” Applying the
 
 Ferguson
 
 factors, he found there were no foreseeable tax consequences of the proposed distribution. The corresponding divorce order awarded Darlene $36,488.50 as a final judgment, bearing interest at a rate of six percent.
 

 ¶ 6. To satisfy the judgment against him, in February 2005, Herbert sought to transfer $36,488.50 from one of his retirement accounts to a separate account for Darlene through a QDRO. Darlene refused to execute the QDRO documents, demanding Herbert pay the judgment in cash.
 

 ¶ 7. Unable to resolve their dispute, Herbert filed a motion for relief under Rule 60 on May 16, 2005. He sought court authority to satisfy the judgment through his retirement funds, using a QDRO. The motion hearing did not occur until May 2009. In the interim, a new special chancellor, Chancellor Franklin C. McKenzie, had been appointed.
 
 [2]
 

 ¶ 8. At the May 1 hearing, Chancellor McKenzie determined the 2005 divorce judgment required clarification. Chancellor Thomas, in the January 2005 divorce judgment, had found: (1) there were no foreseeable tax consequences of the distribution; (2) there were no cash assets to divide; (3) Herbert’s only assets available for transfer were his two retirement accounts; and (4) the parties should each take an equal $69,818.50 share of the marital assets. But the order omitted a finding that Herbert’s accounts were ERISA-qual-ifying, only transferrable through a QDRO to avoid immediate tax liability. At the May 2009 hearing, expert testimony revealed Herbert would lose more than $15,000 in taxes and penalties if he transferred $36,488.50 in cash instead of using a QDRO.
 
 [3]
 

 ¶ 9. Because the intent of the equitable distribution award was for both spouses to take an equal share and avoid immediate tax consequences, the chancellor ordered that Herbert could satisfy the remaining balance of Darlene’s award
 
 [4]
 
 by transfer
 
 *836
 
 ring money from his retirement to a separate account for Darlene, using a QDRO. Because Herbert had already attempted to satisfy fully the January 2005 judgment using a QDRO in February 2005, Chancellor McKenzie denied Darlene’s request for interest on the balance. Darlene timely appealed Chancellor McKenzie’s June 8, 2009 order.
 

 DISCUSSION
 

 A. Rule 60 Relief
 

 ¶ 10. Darlene claims the chancellor erred in allowing Herbert’s Rule 60 motion to be treated as a Rule 59 motion. Because Herbert sought to have the judgment altered or amended, she argues his only remedy was to file a motion under Rule 59(e), which must be filed within ten days of the entry of the judgment. M.R.C.P. 59(e). And because Herbert waited four months to file his motion, she reasons, it should have been dismissed as untimely.
 

 ¶ 11. But the chancery court did not alter or amend its 2005 divorce judgment. Instead, under authority provided in Rule 60(a), it clarified an oversight or omission in the 2005 judgment. Rule 60(a) provides that “errors therein arising from oversight or omission may be corrected by the court at any time on its own initiative or on the motion of any party[.]” M.R.C.P. 60(a). Chancellor McKenzie reasoned that oversight led to the original order omitting the use of a QDRO because a QDRO was the only way to effect the chancellor’s clear intent in the original decision—to avoid tax consequences in the equal distribution of the assets. Although “Rule 60(a) cannot be used to reflect a change in mind by the judge,” it can be used “to correct an order that failed accurately to reflect the judge’s original decision.”
 
 Seymour v. Seymour,
 
 869 So.2d 1035, 1036 (¶ 4) (Miss.Ct.App.2004) (citing
 
 Edwards v. Roberts,
 
 771 So.2d 378, 386 (¶ 27) (Miss.Ct.App.2000)) (finding chancellor’s clarification of “what his decision in the divorce decree was” fell within scope of Rule 60(a)).
 

 ¶ 12. In
 
 Seymour,
 
 a chancellor, upon hearing the husband’s motion to reconsider the amount of the lump-sum-alimony award, determined his previous award required clarification that the award of “lump sum alimony” was for support, not property distribution.
 
 Seymour,
 
 869 So.2d at 1036-37 (¶ 5). Because “Rule 60(a) may be used on the judge’s own motion as a source of authority,” this court found “the chancellor also had the right in responding to Mr. Seymour’s motion, to state that the lump sum alimony was for support.”
 
 Id.
 
 at 1037 (¶ 6). And because the chancellor stated he was not changing his previous award, this court found the chancellor had the discretion under Rule 60(a) to make that clarification.
 
 Id.
 

 ¶ 13. Here, upon hearing the parties’ dispute over
 
 how
 
 the award must be satisfied (by cash or QDRO), the chancellor stated he was not changing the previous order. Instead, he was effecting the intent of the previous award—that the parties share equally without tax consequences— by ordering Herbert to transfer from his retirement account the balance on the judgment using a QDRO. Like the chancellor in
 
 Seymour,
 
 we find Chancellor McKenzie had the right to correct the oversight in the 2005 award that had led to Darlene and Herbert’s dispute.
 

 ¶ 14. Further, we do not find that Chancellor McKenzie’s appointment in 2007 to take over as chancellor in this matter alters
 
 Seymour’s
 
 application. Darlene argues the law-of-the-case doctrine prevented Chancellor McKenzie, as the subsequently appointed chancellor, from
 
 *837
 
 granting Herbert’s post-trial motion. We disagree.
 

 ¶ 15. “Under the law of the case doctrine and general principles of comity, a successor judge has the same discretion to reconsider an order as would the first judge, but should not overrule the earlier judge’s order or judgment merely because the later judge might have decided matters differently.”
 
 In re Ford Motor Co.,
 
 591 F.3d 406, 411 (5th Cir.2009) (citations omitted). At the motion-for-reconsideration hearing, Chancellor McKenzie did not substitute his own judgment but rather found Chancellor Thomas’s award contained an oversight, requiring clarification to effect its intent.
 

 ¶ 16. Rule 63(b) authorizes post-trial appointment of judges to perform the duties of a previous judge. M.R.C.P. 63(b). Because Chancellor Thomas, prior to recusal, had the authority under Rule 60(a) to clarify his judgment, Chancellor McKenzie had the same authority.
 

 B. Interest and Attorney’s Fees
 

 ¶ 17. Darlene also argues Chancellor McKenzie erroneously denied her request for interest on the outstanding balance of her award. The 2005 divorce judgment expressly stated the award of $36,488.50 was a final judgment, accruing interest at the rate of 6% annually until fully satisfied. We note Herbert’s filing of a Rule 60(b) motion, in itself, did not operate as a stay of the judgment or prevent the accumulation of interest. M.R.C.P. 60(b) & cmt.
 
 [5]
 
 But the pending motion was not the reason for denying interest.
 

 ¶ 18. Instead, the chancellor based his decision not to award interest on the $24,187.62 balance of the judgment because (1) Darlene could have received $36,488.50 in retirement through a QDRO within months of the judgment, and (2) Darlene did not have to share any of the investment loss Herbert has experienced in his retirement accounts since 2005. At the 2009 hearing, Chancellor McKenzie found the evidence proved Herbert had offered to transfer $36,488.50 through a QDRO shortly after the 2005 judgment was entered, but Darlene refused to accept it.
 

 ¶ 19. Because Herbert attempted to fully satisfy the judgment soon after its entry but was prevented by Darlene, we find the chancellor did not abuse his discretion in refusing to award Darlene’s request for interest on the balance of her judgment.
 
 Cf. Holmes v. Bates,
 
 218 Miss. 233, 236, 67 So.2d 273, 274 (1953) (Attempted tender of full payment by debtor, which was prevented by creditor, stops the running of interest.).
 

 ¶ 20. Darlene further argues it was error for the chancellor (1) not to cite Herbert in contempt for failing to timely satisfy the judgment and (2) not to award Darlene attorney’s fees. Although she requested and was denied attorney’s fees at the 2005 divorce hearing, she did not revive this request at the 2009 reconsideration hearing. We find her argument is not proper for appeal because Darlene neither moved for a citation of contempt nor notified Herbert she was seeking attorney’s fees.
 
 See Vincent v. Griffin,
 
 872 So.2d 676, 678 (¶ 6) (Miss.2004) (Due process requires one receive adequate notice of contempt charge and a meaningful opportunity to defend oneself before being ordered to pay attorney’s fees.).
 

 
 *838
 
 ¶ 21. Even were her claims for contempt and attorney’s fees proper, they would fail. We review civil-contempt decisions for manifest error.
 
 Dennis v. Dennis,
 
 824 So.2d 604, 608 (¶¶7-8) (Miss.2002) (Contempt is civil when the primary purpose is to enforce the rights of private parties or compliance with a court order.). We review the denial of attorney’s fees for abuse of discretion.
 
 Woodell v. Parker,
 
 860 So.2d 781, 790 (¶ 33) (Miss.2003) (citations omitted) (reviewing award of attorney’s fees in domestic cases for abuse of discretion);
 
 Seghini v. Seghini,
 
 42 So.3d 635, 643 (¶ 31) (Miss.Ct.App.2010) (reviewing award of attorney’s fees based on finding of contempt for abuse of discretion);
 
 see also Day v. Day,
 
 28 So.3d 672, 677 (¶ ¶ 22-23) (Miss.Ct.App.2010) (finding no abuse of discretion in denying party’s request for attorney’s fees, even when other party was found in contempt). Because the chancellor found Herbert attempted to satisfy the judgment in 2005, he did not commit manifest error by failing on his own initiative to cite Herbert for contempt for failing to comply with the order. And because the chancellor found Darlene’s refusal to execute a QDRO prevented her judgment from being satisfied, we find he did not abuse his discretion in denying Darlene’s request for attorney’s fees.
 

 CONCLUSION
 

 ¶ 22. The chancery court had the discretion, under Rule 60(a), to clarify that Herbert may satisfy the judgment through his retirement funds using a QDRO. Therefore, we affirm the grant of Herbert’s Rule 60 motion ordering Herbert to pay the balance of the judgment, $24,187.62, without interest and attorney’s fees, using a QDRO.
 

 ¶ 23. THE JUDGMENT OF THE LAUDERDALE COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 KING, C.J., LEE AND MYERS, P.JJ., IRVING, BARNES AND ISHEE, JJ„ CONCUR. CARLTON, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. GRIFFIS AND ROBERTS, JJ., NOT PARTICIPATING.
 

 [1]
 

 . The rest of the assets were equity in personal vehicles, jewelry, and other personal property, including furniture and household items. The sale of the marital home and division of its equity was not included in the equitable distribution.
 

 [2]
 

 . In June 2007, Herbert had requested the chancellors in Lauderdale County’s judicial district (District 12) recuse themselves. Herbert based his motion on Darlene's employment at the Lauderdale County Justice Court and her subsequent marriage to a local attorney.
 

 [3]
 

 . The expert also testified if Darlene received $36,488.50 through a QDRO, should she withdraw the money early, the taxes and penalties would leave her with $20,799 cash.
 

 [4]
 

 . The hearing also revealed Herbert had allowed Darlene to keep $12,300.88, the amount of equity he was entitled to after selling the marital home. Chancellor McKenzie credited Herbert this amount, leaving $24,187162 to be transferred.
 

 [5]
 

 . In general, to prevent the running of interest while a Rule 60(b) motion is pending, a separate motion under Rule 62(b) must be filed. M.R.C.P. 62(b);
 
 see Franklin v. BSL, Inc.,
 
 987 So.2d 1050, 1052 (¶ 11) (Miss.Ct.App.2008) (Motion for relief did not stay running of deadlines for payment in consent judgment.).