MAXWELL, J.,
 

 for the Court:
 

 ¶ 1. Michael Gary Sr. and Wanda Woods Gary’s original divorce decree ordered Michael to transfer $35,938 in retirement funds to Wanda through a Qualified Domestic Relations Order (QDRO). Before the transfer but after he lost his job, Michael moved his retirement funds to an individual retirement account (IRA). Learning Michael’s 401 (k) and pension had no money, Wanda moved for contempt, which resulted in a consent decree that ordered Michael to pay Wanda $35,938 “at his own expense.” But Michael did not pay, arguing he should be able to transfer money from his IRA using a QDRO. Relying on the consent decree, the chancellor found Michael in contempt for not complying and ordered him to pay Wanda $35,938 in cash and $2,500 in attorney’s fees. Finding no error, we affirm.
 

 FACTS AND PROCEDURAL HISTORY
 

 ¶2. On February 25, 2009, Chancellor Percy Lynchard entered the final divorce decree for Michael and Wanda. Paragraph nine of the decree found Michael had accumulated 59% of his 401(k) plan and pension fund with his employer, DHL, during the marriage. The decree awarded Wanda one half of this 59% (or $27,600 from the 401(k) plan and $8,338 from the pension fund) to be transferred to an account in Wanda’s name only “by way of a Qualified Domestic Relations Order that shall be prepared by [Wanda’s] attorney.”
 

 ¶ 3. On August 5, 2010, Wanda’s attorney received a letter that Michael had no assets in his 401 (k) or pension fund to segregate. Since the divorce, Michael had lost his job with DHL and moved his funds to an IRA. On October 14, 2009, Wanda petitioned the chancery court to find Michael in contempt, requesting $27,600 from Michael’s 401 (k) and $8,338 from his pension.
 

 ¶ 4. The case, which had been closed with the final divorce decree, was reopened and assigned to Chancellor Vicki B. Cobb. On March 3, 2010, Michael and Wanda entered a consent decree. Paragraph six of the decree found:
 

 That the Defendant, Michael Gary, Sr. has of this date failed to pay the sum of $27,600.00 and $8,338.00. That in accordance therewith, the Defendant is ordered to immediately upon entry of this Order, and at his own expense, withdraw the amount of $27,600.00 and $8,338.00 from wherever he has placed these funds and pay said funds to [Wanda] within ninety (90) days of entry of this
 
 *838
 
 Order. Husband shall pay the amount of $1,500.00 to [Wanda’s attorney] for her attorney’s fees incurred in preparing the Qualified Domestic Relations Order. On the report back date the Court will determine if the Defendant is in wilful contempt of court.
 

 ¶ 5. On July 12, 2010, an amended divorce decree was entered nunc pro tunc to February 25, 2009. In the revised order, paragraph nine still found Wanda was entitled to one half of the 59% of the 401(k) and pension. But “[s]ince the funds have now been rolled into an IRA account, it is hereby ordered that [Wanda] is awarded the amount of $35,938.00 to be transferred from the IRA assets.... ”
 

 ¶ 6. Michael did not transfer the money, and Wanda reasserted her petition for citation of contempt. At the November 15, 2010 contempt hearing, Michael argued he should be able to transfer the money to Wanda through a QDRO. The chancellor found, due to Michael removing the funds from the 401 (k) and pension, it was impossible to comply with the original divorce decree. As a result, the chancellor held from the bench:
 

 [T]he consent order changed the character of the money that [Michael was] supposed to transfer to [Wanda]. It doesn’t say by virtue of a Qualified Domestic Relations Order, and when I look at your amended divorce decree, it does not require you to transfer it as retirements funds. It requires you to transfer money to her.
 

 The chancellor ordered Michael pay Wanda $35,938 in cash within ten days of the hearing. The chancellor also found Michael in contempt and awarded Wanda $2,500 in attorney’s fees. This order was entered on November 29, 2010 nunc pro tunc to November 15, 2009.
 

 ¶ 7. On November 24, 2010, Michael filed a motion for reconsideration. He argued the chancellor’s order created a significant financial hardship on him, when it was Wanda’s fault she did not execute the QDRO before he had to transfer the money out of his 401 (k) and pension. The chancellor denied the motion on December 7, 2010. Michael timely appealed the denial of reconsideration.
 

 ISSUES ON APPEAL
 

 ¶ 8. Michael raises two issues on appeal.
 

 ¶ 9. First, he argues Chancellor Cobb erred in denying his motion for reconsideration and holding the amended divorce decree changed the award of retirement funds to cash to be withdrawn at Michael’s expense. Michael asserts there would have never been a problem with payment had Wanda’s attorney submitted a QDRO earlier, before Michael lost his job with DHL. He claims he did not “fail” to pay and should not be responsible for the penalties and tax consequences of withdrawing the funds from his IRA. Michael then argues Chancellor Cobb violated the law of the case by holding the amended decree required cash payment when the original decree, entered by Chancellor Lynchard, clearly required a QDRO.
 

 ¶ 10. Second, Michael argues the chancellor erred in holding him in contempt for moving his funds from his DHL 401 (k) and pension fund, in response to losing his job, before Wanda submitted a QDRO. Michael points to the high burden of proof for civil contempt — clear and convincing evidence — which is placed on the movant, Wanda.
 
 See Allred v. Allred,
 
 735 So.2d 1064, 1067-68 (¶¶ 10, 15) (Miss.Ct.App.1999). And he argues there is not evidence he wilfully refused to pay — instead, he had to transfer the funds out of his 401(k) and pension because he lost his job.
 

 ¶ 11. Wanda filed no brief in response. While the traditional view is that
 
 *839
 
 failure to file a brief is tantamount to a confession of error, there is an exception when this court can “state with conviction after reviewing the record and brief of the appealing party[] that no error existed.”
 
 Conservator of Eldridge v. Sparkman,
 
 813 So.2d 758, 753 (¶ 7) (Miss.Ct.App.2001) (citing
 
 Reddell v. Reddell,
 
 696 So.2d 287, 288 (Miss.1997);
 
 Jackson v. Walker,
 
 240 So.2d 606, 606 (Miss.1970)). If this court can “say with confidence that the case should be affirmed[,]” then it will not automatically reverse based on the appellant’s silence.
 
 Id.
 
 at 756 (¶ 8) (citing
 
 Graham v. Graham,
 
 767 So.2d 277, 279 (¶ 6) (Miss.Ct.App.2000)).
 

 STANDARDS OF REVIEW
 

 ¶ 12. Because Michael filed his motion to reconsider five days before the November 29, 2010 entry of the nunc pro tunc order, this court considers his motion for reconsideration as a motion for new hearing or, alternatively, to amend or alter the judgment under Rule 59. M.R.C.P. 59(a), (e) (requiring both motion for new trial and a motion to alter or amend the judgment “be filed not later than ten days after entry of the judgment”);
 
 see Street v. Street,
 
 936 So.2d 1002, 1008 (¶ 17) (Miss.Ct.App.2006) (finding a motion to alter the judgment filed after the court made findings of fact but before the entry of a final judgment was timely under Rule 59).
 

 ¶ 13. “An appeal from a denial of a Rule 59 motion may address the merits of the entire underlying proceeding, and review of a trial judge’s denial of a Rule 59 motion is limited to abuse of discretion.”
 
 Perkins v. Perkins,
 
 787 So.2d 1256, 1261 (¶ 9) (Miss.2001). “This Court will not disturb the chancellor’s opinion when supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong, clearly erroneous, or an erroneous legal standard was applied.”
 
 Townsend v. Townsend,
 
 859 So.2d 370, 371-72 (¶ 7) (Miss.2003) (quoting
 
 McBride v. Jones,
 
 803 So.2d 1168, 1169 (¶ 7) (Miss.2002)).
 

 ¶ 14. This court reviews civil-contempt decisions for manifest error.
 
 Jones v. Mayo,
 
 53 So.3d 832, 838 (¶ 21) (Miss.Ct.App.2011) (citing
 
 Dennis v. Dennis,
 
 824 So.2d 604, 608 (¶¶ 7-8) (Miss.2002)).
 

 DISCUSSION
 

 ¶ 15. The consent decree clearly ordered Michael to pay Wanda $35,938 at his own expense. Therefore, even though Wanda filed no responsive brief, we can say with confidence the chancellor’s finding of contempt and order that Michael pay Wanda $35,938 in cash and $2,500 in attorney’s fees should be affirmed.
 

 ¶ 16. Contrary to Michael’s argument, Chancellor Cobb did not fail to apply the law of the case established by Chancellor Lynchard. Michael relies on
 
 Jones
 
 to assert he should be permitted to pay Wanda through a QDRO because to award Wanda otherwise would violate the intent of the original divorce decree.
 
 See Jones,
 
 53 So.3d at 836-37 (¶¶ 13-15). But unlike
 
 Jones,
 
 this case is not about a subsequent chancellor having to interpret a previous chancellor’s order.
 
 Cf. Jones,
 
 53 So.3d at 837 (¶ 15). Because the funds were no longer in the DHL 401(k) and pension fund, both parties acknowledged it was impossible to comply with the original decree. So a new consent decree was entered on March 3, 2010. Chancellor Cobb rightly found this later decree “changed the character” of the award. The original divorce decree was no longer the law of the case—the consent decree and resulting amended divorce decree now controlled. Thus, in contrast to
 
 Jones,
 
 Chancellor Cobb’s task was not to interpret the intent of the original decree entered by a previous chancellor. Instead, her limited role
 
 *840
 
 was to enforce the clear terms of the consent decree and amended divorce decree.
 

 ¶ 17. The consent decree ordered Michael to withdraw $35,938 “at his own expense” and made no reference to a QDRO. The later-filed amended divorce decree also awarded Wanda $35,938.00 “to be transferred from the IRA assets” also without mentioning a QDRO. Based on these decrees, we find the chancellor neither abused her discretion in finding Michael was required to pay Wanda in cash nor in denying Michael’s motion to reconsider.
 

 ¶ 18. Regarding the contempt finding, Michael’s argument focuses on the events of 2009 — his job loss and Wanda’s alleged feet-dragging in submitting the QDRO. But Michael’s does not address the events of 2010 — namely, the fact Michael entered into a consent decree in March 2010 in which he was ordered to withdraw $35,938 immediately and at his own expense but then refused to do so, requiring Wanda to reassert her motion for contempt. Based on these facts, we find the chancellor did not manifestly err in finding Wanda met her burden to show civil contempt.
 
 See Jones,
 
 53 So.3d at 838 (¶ 21);
 
 Allred,
 
 735 So.2d at 1067-68 (¶¶ 10, 15).
 

 ¶ 19. We, therefore, affirm the chancellor’s finding of contempt and order that Michael pay Wanda $35,938 in cash and $2,500 in attorney’s fees.
 

 ¶ 20. THE JUDGMENT OF THE DE-SOTO COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS AND FAIR, JJ., CONCUR. RUSSELL, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. CARLTON, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.