814 So.2d 166 (2002)
Marlene Lynn (INGRAM) Cooper, Appellant,
v.
Martin Douglas INGRAM, Appellee.
No. 2001-CA-00167-COA.
Court of Appeals of Mississippi.
January 22, 2002.
Rehearing Denied April 16, 2002.
*167 Darlene D. Ballard, Jackson, Attorney for Appellant.
Randy A. Clark, Jackson, Attorney for Appellee.
Before McMILLIN, C.J., LEE, and MYERS, JJ.
LEE, J., for the Court.
¶ 1. The issues raised with this appeal concern the chancellor's modification of child custody. The parties to this matter, Marlene Cooper and Martin Ingram, were divorced in 1994 after ten years of marriage. A Rankin County chancellor awarded primary custody and care of the two children, ages nine and four at the time, to Marlene. In August 2000, Martin filed a motion for modification asking that the chancellor transfer custody of the two boys to him. After a December 2000 hearing on the motion, the chancellor modified custody of both boys, citing in his judgment the preference of the older child, James, to live with his father, and noting that the younger child, Tyler, experienced serious academic problems which could possibly be remedied with the modification. On appeal, Marlene argues that the chancellor erred in modifying custody of both Tyler and James to their father when the requisite standards for such change had not yet been met. As described herein, we find that the chancellor did not abuse his discretion in modifying custody of both children, and we affirm.

DISCUSSION OF THE ISSUES

I. DID THE CHANCELLOR ABUSE HIS DISCRETION IN MODIFYING CUSTODY OF TYLER INGRAM AND JAMES INGRAM?
¶ 2. At the outset, we note our limited standard of review concerning a chancellor's decision. A chancellor must be manifestly wrong, clearly erroneous, or apply an erroneous legal standard in order for this Court to reverse. Lipsey v. Lipsey, 755 So.2d 564(¶ 3) (Miss.Ct.App.2000). Next, we review the guidelines by which a chancellor has the authority to modify a decree for child custody. The moving party must first prove by a preponderance of the evidence that, since entry of the judgment or decree sought to be modified, there has been a material change in circumstances which adversely affects the welfare of the child. Lipsey, 755 So.2d at (¶ 5). Second, if such an adverse change has been shown, the moving party must show by like evidence that the best interest of the child requires the change of custody. Id. Not every change in circumstances warrants a modification of custody the chancellor must consider the totality of the circumstances. Id.

1. Tyler Ingram

¶ 3. We first examine the circumstances which led the chancellor to modify custody of Tyler Ingram. Tyler was ten years old at the time of the modification. At the hearing, evidence was presented that Tyler had a learning disability which *168 had hindered his progress in school since he began kindergarten. Martin and Marlene had attended to Tyler's learning disability by having him tested, in enlisting the aid of tutors and after-school programs, and by placing him in summer school in order for him to advance to the next grade level. By the fourth grade, though, Martin and Marlene disagreed as to how to address Tyler's ongoing educational needs. Martin wished to place Tyler in a private education center, where he had received extra tutoring in the summers; Marlene wished to pursue private tutoring and to place Tyler in the Individual Education Program at the public school before resorting to a complete transfer to a private school. The chancellor reviewed this evidence and stated the following in his judgment:
The Court as to the issue of Tyler finds that Tyler has experienced long and continuous academic problems and has remained under [his mother's] supervision as to his economic course with [his father] having little input in school decisions despite a joint custodial arrangement. Though [his mother's] intentions have been well-intended, her course of help has not helped Tyler to show significant improvement in his academics. The long uninterrupted academic struggles of Tyler without timely intervention by the primary custodial parent is a material change in circumstances adverse to Tyler's best interest.

(emphasis added). In the present case, the parents disagreed on what course to take concerning Tyler's educational needs and training. From the record, we learn that Tyler unquestionably has special needs with regard to his education, and he has experienced academic problems since he entered kindergarten. Dr. Drabman, an expert clinical child psychologist, testified that Tyler needed a learning environment where he could be in a small classroom setting and could receive individualized attention. As cited in the excerpt above, the chancellor recognized that Marlene's insistence on following her own chosen method to tend to Tyler's academic needs and her refusal to consider the expert's recommendations have proven to have an adverse impact on Tyler's academic progress, and this constitutes a material change in circumstances that is adverse to Tyler's best interests.
¶ 4. We review the chancellor's decision and find no evidence of abuse of discretion. The chancellor viewed the disposition of each witness that testified and was privy to documentation concerning Tyler's testing and academic scores. Having found no abuse, we affirm the modification of physical custody of Tyler Ingram to his father.

2. James Ingram

¶ 5. Marlene argues that the chancellor erred in modifying custody of James Ingram to his father, and Martin counters that James gave many valid reasons for wanting to live with his dad. James testified that he had his own room at his father's house and he and his brother got along better when they were at their father's house. James also explained that he and his father liked the same kind of music and that he enjoyed spending time with his father going to concerts and outings with his father's rock-n-roll band.
¶ 6. The law with regard to the preference of a child James's age is clear. When both parents are deemed proper and fit, if the child is at least twelve years old, his or her preference can be considered. Miss.Code Ann. § 93-11-65 (Rev.1994). However, the chancellor cannot use the child's stated preference alone to determine if a modification is necessary ... the main objective is the best interests of the *169 child. See Westbrook v. Oglesbee, 606 So.2d 1142, 1146-47 (Miss.1992).
¶ 7. From all indications in the record, both parents were suitable and both had appropriate living environments in which to raise their children. In fact, James made it very clear that he loved both of his parents and that his mom had provided him a good home and had always taken care of his needs. Standing alone, James's reasons for wanting to live with his father may not meet the standard for modifying custody; however, we look to the totality of the circumstances in modification issues. Lackey v. Fuller, 755 So.2d 1083(¶ 24) (Miss.2000). Having previously found no abuse in the chancellor's decision to modify custody of Tyler Ingram, the younger son, we look to the rule that if possible, it is in the best interest of siblings that they remain together. Bredemeier v. Jackson, 689 So.2d 770, 775 (Miss. 1997). As stated, the child's preference alone is not sufficient to warrant modification, but in this case, looking to James's preference to live with his father, finding that both parents are fit and caring, and recognizing that the best of interests of the boys require they be kept together, we find that the chancellor did not abuse his discretion in modifying custody of James to his father.
¶ 8. THE JUDGMENT OF THE RANKIN COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE TAXED TO THE APPELLANT.
McMILLIN, C.J., SOUTHWICK, P.JJ., BRIDGES, THOMAS, IRVING, MYERS, CHANDLER AND BRANTLEY, JJ., CONCUR. KING, P.J., CONCURS IN RESULT ONLY.