964 So.2d 524 (2007)
Jennifer Erin WILLIAMSON, Appellant
v.
William Dale WILLIAMSON, Appellee.
No. 2004-CA-02519-COA.
Court of Appeals of Mississippi.
March 13, 2007.
Rehearing Denied June 19, 2007.
Patricia Peterson Smith, attorney for appellant.
Jennifer Powell Fortner, attorney for appellee.
Before KING, C.J., CHANDLER and ISHEE, JJ.
ISHEE, J., for the Court.
¶ 1. On December 10, 2004, the Chancery Court of Warren County entered an amended memorandum opinion and final judgment, which denied Jennifer Williamson's motion to modify the custody of a minor child. She appeals to this Court, asserting two issues: (1) the chancery court erred in failing to grant a change in *526 custody of the minor child, and (2) the chancery court erred in finding her request for a grant of habeas corpus for the child in question was moot. Finding no error, we affirm.

FACTS
¶ 2. Dale and Jennifer Wilson were divorced on August 9, 2001, upon the grounds of irreconcilable differences. By agreement of the parties, Dale was given primary physical custody of the only child of the marriage, their daughter, Skyler, who was born on November 2, 1999. While at the time of the divorce it was not known that Skyler suffered from any medical condition, the record shows that there had been various diagnoses of developmental delay, including speech deficits, possible autism, a definitive diagnosis of autism, and possible mental retardation.
¶ 3. At the time of the divorce, the couple lived in a mobile home next to Jennifer's mother. After the divorce, Jennifer moved into her mother's home, and Dale and Skyler remained in the mobile home. Dale worked in the gaming industry. Jennifer was a college student and was not represented by counsel in the divorce.
¶ 4. In the summer of 2002, Dale and Skyler, along with Dale's then girlfriend Sina, moved to Philadelphia, Mississippi, where Dale and Sina obtained employment in a casino. Dale and Sina subsequently married. Shortly after the move, Jennifer began asking to have Skyler evaluated for developmental delays. At the age of three, she could not speak intelligibly. In July 2002, Skyler was evaluated at Hudspeth Regional Medical Center, and it was recommended that she be placed in her home school district's early intervention program. For reasons Dale never adequately explained, he failed to immediately follow through on this recommendation.
¶ 5. On October 31, 2002, Jennifer filed a petition to modify the divorce decree and sought to be named the primary custodial parent. Jennifer asserted that Skyler was not developing physically, nor were her verbal abilities developing, as one would expect among like aged children, and she sought primary custody. During a three day hearing, the chancery court found that an expert witness accepted by both parties, Dr. Wood Hiatt, testified that Skyler may be severely mentally retarded. However, Dr. Hiatt stated that Dale's delay in accessing treatment for Skyler was not neglect, and it was difficult for parents, especially a young parent such as Dale, to accept and appreciate the needs of a child such as Skyler. Following the hearing, the chancery court entered a final judgment on March 7, 2003, denying Jennifer's petition to modify custody. Jennifer did not file a timely appeal from this order.
¶ 6. On April 14, 2003, after retaining different counsel, Jennifer filed a M.R.C.P. Rule 60(b)(1) motion for relief from judgment or in the alternative modification of custody. In this pleading, Jennifer alleged that the chancery court placed undue weight upon the testimony of Dr. Hiatt and that Dale and Sina had made factual misrepresentations to the chancery court, including the following: Skyler was enrolled in special education in Neshoba County, and Dale and Sina were best able to provide for Skyler's special needs because of Sina's nursing certification. The M.R.C.P. Rule 60(b)(1) motion also asserted that immediately after the hearing, without notice to either the chancery court or Jennifer, Dale and Sina quit their employment in Mississippi and moved to Alaska, taking Skyler with them, and this move had been planned prior to the hearing in February of 2003 and final judgment of March 7, 2003. Further, the pleading asserted that the special education services *527 that had been obtained in Alaska were insufficient to meet Skyler's needs.
¶ 7. On April 14, 2003, Jennifer filed a petition for habeas corpus, which was based on similar assertions of factual misrepresentations by Dale and Sina, seeking temporary custody of Skyler until such time as a hearing upon the M.R.C.P. 60(b)(1) motion could be had. Ultimately, the writ did issue, but it appears from the record that the parties entered into at least two agreed orders of visitation, with continuances entered on enforcing the writ, and there is no suggestion that Dale attempted to evade the chancery court's jurisdiction.
¶ 8. In January of 2004, and continuing during August of 2004, the chancery court held a hearing upon the M.R.C.P. 60(b)(1) motion and the petition for habeas corpus.
¶ 9. On December 10, 2004, the chancery court entered its amended memorandum opinion and final judgment, which is presently the subject of appeal to this Court. The chancery court denied the M.R.C.P. 60(b)(1) motion and found the habeas corpus petition was moot. In doing so, the chancery court made findings of fact. These included the following: the court did not unduly rely upon the testimony of Dr. Hiatt, and the record before it showed that Dale was taking Skyler to an ear, nose and throat specialist, and hoped that a tonsillectomy would help with the speech defect. He enrolled her in the Neshoba County schools in February 2002, and she underwent hearing testing in January 2003. The chancery court also found that had Jennifer sought to take issue with Dr. Hiatt's familiarity with Skyler, she had the opportunity to do so at the three day hearing underlying its March 7, 2003, final judgment. Concerning the treatment provided to Skyler, the chancery court stated "[w]hat was important to this court was that from July (2002) to February (2003) Dale was attempting to help their child."
¶ 10. The chancery court further found that Dale had not misrepresented Skyler's educational status, and he had truthfully testified that she was enrolled in the Neshoba County School District, but had not yet begun attending classes because Dale was in court on the day when Skyler was to begin attending school. Additionally, the chancery court found that Dale's testimony that Sina was trained in speech therapy was supported by the record, as a letter from a former employer stated that Sina had assisted in providing speech therapy. However, Sina had testified she held some certification in both speech therapy as well as nursing, when in fact, she held no certification in speech therapy and her certification as a nursing assistant had lapsed. The chancery court found that these misrepresentations were not calculated to mislead the court, and in fact, the testimony relevant to the decision had been her training and experience, not any formal certification, and the misrepresentation was not that which could support granting a M.R.C.P. 60(b)(1) motion.
¶ 11. Lastly, concerning the M.R.C.P. 60(b)(1) motion, the chancery court found that there was no showing that Dale had in any way planned the move to Alaska to deceive the court. Dale testified that he and Sina decided to move after a physical altercation with Jennifer in February of 2003, and Dale produced his application to his Alaska employer, which was dated March 3, 2003.
¶ 12. The chancery court found that allegations going to facts that occurred after the February 2003 hearing were not proper to a M.R.C.P. 60(b)(1) motion. Nevertheless, the chancery court found that the move constituted a material change in circumstances, but such a move had not been detrimental to Skyler. The *528 court noted that various experts had recommended different treatments for Skyler. The record showed she was enrolled in special education in Alaska, and was receiving speech therapy twice weekly from the school, and additional therapy was provided through a second speech therapist. She additionally received occupational therapy and yoga therapy especially designed for children with developmental delays.

ISSUES AND ANALYSIS
¶ 13. Jennifer contends that the chancellor erred in denying relief from the March 7, 2003, final judgment under the M.R.C.P. 60(b)(1) motion. Appellate review of a trial court's ruling upon a Rule 60(b)(1) is limited to abuse of discretion. Stringfellow v. Stringfellow, 451 So.2d 219, 221-22 (Miss.1984). Among the findings necessary to support granting relief is that, a trial court must find both that a witness intended to misrepresent some fact in order to influence the decision by the finder of fact, and that the finder of fact did rely upon the misrepresentation in its decision. Id.
¶ 14. In her brief, Jennifer makes several arguments going to the weight of the evidence in the first final judgment, especially to the weight the chancellor afforded Dr. Hiatt's testimony. These facts are beyond appellate review of the Rule 60(b)(1) motion.
¶ 15. On appeal, Jennifer contends the chancellor erred in her findings that Dale and Sina did not misrepresent their plans to move to Alaska, and that Skyler was enrolled in the Neshoba County public schools. Our review of the record shows that these findings were supported by the evidence. Jennifer further contends that the chancellor erred in his findings on Sina's misrepresentations concerning her certification in speech therapy and as a nursing aide. The chancellor found that while there had been misrepresentations as to these facts, they were not intentionally aimed at altering the outcome of the proceedings, nor had the chancellor actually relied upon them. We cannot say the chancellor abused her discretion as to these misrepresentations, and there is no merit to the assertion that the chancellor erred in denying relief under M.R.C.P. 60(b)(1).
¶ 16. Jennifer also contends that the chancellor erred by denying her custody of Skyler based on facts occurring after the March 7, 2003, final judgment. While Jennifer agrees with the chancellor that Dale and Sina's move constituted a change in circumstances, she takes issue with the finding that Skyler has not been adversely affected. A chancellor's findings in a custody matter will not be disturbed unless manifestly wrong, clearly erroneous or based upon an erroneous legal standard. Cooper v. Ingram, 814 So.2d 166, 167(¶ 2) (Miss.Ct.App.2002). For a change in custody, the preponderance of evidence must show both a change in circumstance and an adverse effect by the change. Id. The chancellor must look to the totality of the circumstances, rather than to facts in isolation. Id. The best interest of the child is the "polestar" consideration. Johnson v. Gray, 859 So.2d 1006, 1013(¶ 33) (Miss. 2003).
¶ 17. Jennifer's assertions are basically that Skyler is not receiving as many services in Alaska as she would in Mississippi, and that these additional services are necessary. The chancellor found that Skyler's need for stability was a strong concern, and because Dale had been the primary caretaker for the majority of her life, this factor weighed in Dale's favor. Moreover, the chancellor found that Skyler had been evaluated by many experts, all of whom had different opinions as to *529 her treatment, and there were even conflicting opinions as to her diagnosis. The evidence is undisputed that Skyler received special education classroom services three times a week and speech therapy twice weekly from the public schools in Alaska, with additional speech therapy and occupational therapy provided through health insurance, along with a yoga class to help develop her musculature control. Jennifer contends that despite this evidence, Dr. Katherine Nordell's and Anne Sullivan's testimony established that these services were insufficient. However, neither of these witnesses had first hand knowledge of the Alaska services. Conversely, witnesses from Alaska testified Skyler was benefitting from educational and medical services. Based upon this evidence, this Court cannot say the chancellor was manifestly in error in denying the change in custody, and there is no merit to this issue.
¶ 18. Lastly, Jennifer contends that the chancellor erred in finding the request for the writ of habeas corpus was moot. While the record appears to show that the writ did issue to procure Skyler's attendance for the hearing upon the Rule 60(b)(1) motion, and in the alternative a change in custody, the hearing was set back by mutual accord between the parties. Moreover, because the chancellor entered a final order there is no logical reason for the writ to be enforced, and Jennifer fails to cite any authority for this proposition to the contrary. Therefore, there is no merit to the contention that the chancellor erred in finding the request for the writ of habeas corpus was moot.
¶ 19. THE JUDGMENT OF THE WARREN COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES, ROBERTS AND CARLTON, JJ., CONCUR.