MYERS, P.J., for the Court:
 

 ¶ 1. Christopher (Chris) and Kristy Seghini were married on February 19, 2000, and they resided in Simpson County, Mississippi. They separated on May 31, 2007, approximately six months after the birth of their second child. On August 7, 2007, Kristy filed a complaint seeking divorce for adultery.
 

 ¶ 2. During the marriage, Chris was self-employed as a trim carpenter. He also had worked, for a time, as a police officer in Mendenhall, Mississippi, under Kristy’s father, who was the chief of police for the
 
 *638
 
 town. Kristy held various jobs during the marriage, including working at a bank and a daycare, before becoming a licensed practical nurse (LPN). The Seghinis had financed their marital home through a loan from Kristy’s grandfather. They also had borrowed approximately $25,000 from the grandfather to pay for medical expenses.
 
 [1]
 

 ¶ 3. An agreed temporary order awarded Kristy custody of the children and Chris visitation. The order provided for $484 per month as temporary child support. It also awarded Kristy temporary use and possession of the marital home, with Chris being responsible for an additional $516 for the monthly mortgage note and other incidental bills. The temporary order also provided that Chris would pay approximately $650 per month for the note and insurance on Kristy’s vehicle, a 2004 Chevrolet Tahoe.
 

 ¶ 4. At trial, Kristy testified that the separation had been very difficult because she first discovered Chris’s infidelity while pregnant with their second child. Repeated attempts to reconcile had failed, and Chris was now living with his paramour. Chris admitted his adultery. The only significant factual dispute at the divorce trial was Chris’s income as a self-employed carpenter. Chris had reported take-home income of approximately $2,400 per month in his Rule 8.05
 
 [2]
 
 financial disclosure, but Kristy alleged that he made significantly more. She stated that during the marriage Chris had been taking home between $1,000 and $2,500 per week. Chris testified that he did not know how much money he made, but he admitted that it was more than he had reported on his 8.05 statement. Chris even went so far as to describe his 8.05 statement as a “lie” under cross-examination. But it also appears from his testimony that Chris was uncertain as to how the number should be calculated — he testified that he believed his employees were paid from his take-home pay. Chris testified that he could not afford the approximately $1,900 per month he had been paying under the temporary order.
 

 ¶ 5. Immediately after both parties rested, the chancellor asked Kristy several questions regarding the status of the marital home and her employment. The court indicated that it was interested in documentation regarding the home and indicated that it intended to order an appraisal. It is unclear from the record what prompted it, but during this questioning Kristy’s attorney stated:
 

 Judge, I’ve been informed that the house is in [Kristy’s grandfather’s] name because it’s been foreclosed on. The note was not paid, so it’s been foreclosed on.
 

 Chris’s attorney replied that he wanted to know why the mortgage had not been paid, or, specifically, what the temporary award that was supposed to pay the mortgage had been used for. He also stated that he suspected that the foreclosure was fraudulent.
 

 ¶ 6. The chancellor called for a recess and a discussion in chambers. After that discussion — held off the record — was completed, the chancellor stated on the record that he had received several deeds and other documents relating to the home. He recited that Kristy’s grandfather had held a deed of trust to the property signed by both Chris and Kristy on May 2, 2001. Chris had executed a quitclaim deed trans
 
 *639
 
 ferring his interest in the property to Kristy on August 15, 2005. The foreclosure sale had been completed about ten days after Kristy had filed for divorce, and Kristy’s grandfather had purchased the home at auction for $50,000. The court then placed those documents into the record as an exhibit. The chancellor then announced his decision from the bench as to the divorce, property settlement, and other issues.
 

 ¶ 7. The court awarded Kristy custody of the children and ordered Chris to pay $500 per month in child support.
 
 [3]
 
 Chris was granted standard visitation with the children. Both parties were awarded the marital property currently in their possession, and Chris was ordered to pay all the marital debt — about $30,000 — except for Kristy’s credit card. Chris also was ordered to pay for the insurance on Kristy’s vehicle, and each of the parties was to maintain life insurance on the other. The order granting Kristy’s divorce for adultery was filed on October 2, 2008.
 

 ¶ 8. Chris filed a post-trial motion under Mississippi Rule of Civil Procedure 60(b) to set aside the judgment. Chris alleged that Kristy had made material misrepresentations regarding the status of the marital home prior to and during the divorce trial. At the hearing on the motion, Chris suggested that the foreclosure had been fraudulent but admitted that he could not substantiate the allegation. The chancellor denied the motion, stating that he had been aware of the foreclosure at the time he rendered his decision and that no new evidence had been offered.
 

 ¶ 9. On appeal, Chris does not challenge the divorce or custody awards, but he alleges that the chancery court erred in awarding child support and alimony without a specific finding of fact regarding his income.
 
 [4]
 
 He also argues that the chancellor erred in failing to consider the excess bid from the foreclosure sale of the marital home — about $27,000 — in effecting the property division and alimony. Chris also argues that the chancellor erred in denying his post-trial motions and in finding him in contempt of the divorce judgment.
 

 STANDARD OF REVIEW
 

 ¶ 10. “In domestic relations cases, [the appellate court’s] scope of review is limited by the substantial evidence/manifest error rule.”
 
 Samples v. Davis,
 
 904 So.2d 1061, 1063-64 (¶ 9) (Miss.2004) (citing
 
 Jundoosing v. Jundoosing,
 
 826 So.2d 85, 88 (¶ 10) (Miss.2002)). We “will not disturb the chancellor’s opinion when [it is] supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong, clearly erroneous, or an erroneous legal standard was applied.”
 
 Id.
 
 at 1064 (¶ 9) (quoting
 
 Holloman v. Holloman,
 
 691 So.2d 897, 898 (Miss.1996)). However, questions of law are reviewed de novo.
 
 Amiker v. Drugs for Less, Inc.,
 
 796 So.2d 942, 945 (¶7) (Miss.2000).
 

 DISCUSSION
 

 1. Chris’s Income; Child Support and Alimony
 

 ¶ 11. The chancellor made no specific finding regarding Chris’s income in awarding either the $500 per month in child support — increasing to $650 — or the $500 per month in periodic alimony; he noted only that Chris made more money
 
 *640
 
 than Kristy. The court did make some findings of fact under the familiar
 
 Armstrong
 
 factors
 
 [5]
 
 in awarding alimony. The chancellor noted that Kristy would need a place to live and would have to pay for daycare for the couple’s youngest child. The chancellor also noted Chris’s adultery and held that the approximately eight-year marriage “touche[d] on a long-term marriage.” Finally, the court found that Kristy’s past heart surgery indicated that she may incur future medical expenses.
 

 ¶ 12. On appeal, Chris argues that the chancellor’s awards cannot stand on appeal without a specific finding of Chris’s adjusted gross income. He also contends that the chancery court erred in its analysis of several
 
 Armstrong
 
 factors. We agree in both respects.
 

 ¶ 13. “A chancellor’s deviation from the Mississippi child support guidelines must be supported by an on the record finding that said deviation is warranted.”
 
 White v. White,
 
 722 So.2d 731, 734 (¶ 23) (Miss.Ct.App.1998). For two children, the guidelines set child support at twenty percent of the payor’s adjusted gross income. Miss.Code Ann. § 43-19-101(1) (Rev.2009). As to alimony, “[wjhether to award alimony and the amount of alimony are largely within the discretion of the chancellor.”
 
 Parsons v. Parsons,
 
 678 So.2d 701, 703 (Miss.1996).
 

 ¶ 14. The chancellor did not make a finding that deviation from the guidelines was warranted. Taking the child support at $500 per month, we might conclude that the chancellor found Chris’s adjusted gross income to be five times that amount, or $2,500 — approximately what Chris had listed on his 8.05 declaration (or $3,250, if we take child support to be $650 per month). But we find it difficult to reconcile either derived number with the alimony awarded, which suggests a greater income disparity between the parties. At the time of the divorce, Kristy earned approximately $2,040 per month, or about $1,800 after taxes.
 

 ¶ 15. The remaining factors cannot support the alimony awarded by themselves. The marriage, at eight years, was not particularly long, and Kristy — twenty-nine years of age at the time of the divorce— worked full time as an LPN. And while it is undisputed that Kristy had undergone heart surgery some time during the marriage, the record is silent as to exactly what kind of heart surgery it was. There was no evidence offered that Kristy suffered from continuing health problems or that she would incur the future difficulties or medical expenses that the chancellor had sought to protect against with the alimony award.
 

 ¶ 16. The chancellor likewise did not directly address Chris’s ability to pay and still provide for his own basic expenses. Under the temporary order, Chris had paid approximately $2,000 per month between alimony, child support, and marital debts. Chris testified that he had lived
 
 *641
 
 with his girlfriend or his parents since the separation and was unable to afford to live on his own under the separate order. Under the final judgment of divorce, Chris’s monthly obligations were comparable to those under the temporary order, although they would be reduced significantly after Kristy’s vehicle was paid off. Chris was also ordered to assume nearly all of the marital debt.
 

 ¶ 17. In
 
 Gray v. Gray,
 
 745 So.2d 234, 237 (¶ 14) (Miss.1999), the supreme court held that without an express finding of fact as to the payor’s income, “it cannot be said that the [child support] guidelines were either followed or not followed.” The child support award was therefore vacated and the issue remanded to the chancery court. Because of the uncertainty regarding the husband’s income, the court likewise vacated and remanded the alimony award for the chancellor to make more detailed findings of fact regarding the
 
 Armstrong
 
 factors. We find
 
 Gray
 
 instructive, and we vacate and remand on both issues.
 

 2. Property Division
 

 ¶ 18. Chris argues that the chancellor erred in not making express findings of fact regarding the
 
 Ferguson
 
 factors
 
 [6]
 
 and in failing to consider money received from the foreclosure sale of the marital home.
 

 ¶ 19. As we have said, the marital estate contained few assets. The parties had divided the marital property between themselves after separation, and the disposition of much of it was not contested at trial. The chancellor ordered that the parties would receive the property currently in their possession. It was specifically ordered that Kristy would receive the remaining contents of the marital home, her vehicle, and an ATV; Chris would receive his primary automobile (a late-model Ford truck used in his business, a net liability), two older automobiles, and a motorcycle. This appears to track the parties’ own distribution of the assets after separation. Other than the notes on the two primary vehicles, the marital debt stemmed primarily from the recent birth of the couple’s second child and Kristy’s heart surgery. The unsecured debt amounted to about $30,000, and Chris was ordered to assume the great majority of it.
 

 ¶ 20. Regarding Chris’s allegations that the marital estate should have also included significant funds received by Kristy as part of the excess bid on the marital home from the foreclosure sale, Chris simply faded to develop this issue at trial. No testimony was elicited as to what was received or whether any of this sum remained at the time of the divorce. We cannot hold the chancellor in error for not considering an asset if its present disposition or even its very existence was not established at trial.
 

 ¶ 21. As to the
 
 Ferguson
 
 factors, the supreme court has held that the chancellor is only required to address those factors that are relevant to the case at hand.
 
 Weathersby v. Weathersby,
 
 693 So.2d 1348, 1354 (Miss.1997). Moreover, this Court has held that failure to make an explicit factor-by-factor analysis does not necessarily require reversal where we are satisfied that the chancellor considered the relevant facts.
 
 Palmer v. Palmer,
 
 841 So.2d 185, 190 (¶ 18) (Miss.Ct.App.2003). Here, there was no dispute that the property at issue was marital, and both parties offered valuations of nearly everything in their 8.05 statements. Chris has failed to cite to any specific facts the chancellor failed to consider or to show any abuse of discretion in the chancellor’s award. This issue is without merit.
 

 
 *642
 
 3. Rule 60(b)(1) Motion for Relief from Judgment
 

 ¶22. About one year before the divorce trial (and shortly after Kristy filed for divorce), Kristy’s grandfather foreclosed on the marital home. This fact did not come to light during the trial until after both parties had rested and Kristy’s attorney revealed it to the court. The attorney stated that he had just been informed of the foreclosure, but the record is silent as to who informed him or why it had not been done previously.
 

 ¶ 23. It appears that Kristy was either ignorant of the foreclosure or had deliberately concealed it. She identified the home as marital property in her 8.05 statement, and she testified during the trial that she had continued, off and on, to reside there. Her property remained in the home, and she continued to maintain it. Although she was living with her parents at the time of the trial, Kristy testified that she intended to return to the marital home. She asked the court to award it to her in the property division.
 

 ¶ 24. On appeal, Chris alleges that Kristy deliberately misrepresented the status of the home. He argues that the chancellor abused his discretion in failing to grant the post-trial motion for relief from the judgment under Rule 60(b)(1) of the Mississippi Rules of Civil Procedure.
 

 ¶ 25. “Appellate review of a trial court’s ruling upon a Rule 60(b)(1) is limited to abuse of discretion.”
 
 Williamson v. Williamson,
 
 964 So.2d 524, 528 (¶ 13) (Miss.Ct.App.2007) (citing
 
 Stringfellow v. Stringfellow,
 
 451 So.2d 219, 221-22 (Miss.1984)). “Among the findings necessary to support granting relief is that, a trial court must find both that a witness intended to misrepresent some fact in order to influence the decision by the finder of fact, and that the finder of fact did rely upon the misrepresentation in its decision.”
 
 Id.
 

 ¶ 26. As the chancellor noted, this argument fails because the trial court was aware of the foreclosure at trial, before it made its ruling. Chris’s complaint on appeal is actually centered around the consequences of the late disclosure — he argues that he was effectively precluded from cross-examining Kristy about the foreclosure and the money she should have received from the sale. But the fact is that Chris made no attempt to further question Kristy at trial. He made no motion to reopen the evidence or for a continuance, no proffer, and, indeed, no objection of any sort after Kristy’s attorney revealed the foreclosure. Even at the hearing on the post-trial motions, Chris made no effort to substantiate his allegations through testimony or other evidence. Instead, he speculated — as he now speculates — about what had occurred after the foreclosure.
 

 ¶ 27. Chris has failed to show that the chancellor abused his discretion in denying the Rule 60(b)(1) motion. This issue is without merit.
 

 4. Contempt
 

 ¶ 28. After the divorce, Chris failed to pay numerous awards under the divorce decree — including all of the alimony payments and all but one of the monthly payments to Kristy’s grandfather. He had, however, stayed current on the child support and had paid off Kristy’s automobile. On April 30, 2009, the chancellor heard Kristy’s motion for contempt. Chris admitted he had not paid; he stated that he was unable to pay all of his obligations because work had been slow and he could not find other employment. Chris stated that he had earned only about $6,600 since the beginning of 2009. He offered an incomplete amended tax return from 2008 and a ledger from his business to support
 
 *643
 
 his defense. The chancellor, unimpressed, found Chris in contempt and ordered him to pay approximately $5,700 within twenty-four hours. The chancellor also awarded Kristy $3,000 in attorney’s fees. Chris did not pay, and he was imprisoned for contempt for about forty days before posting bond.
 

 ¶ 29. On appeal, Chris argues that the chancellor erred in not accepting his defense that he was genuinely unable to pay.
 

 ¶ 30. The court’s power to imprison a person until he complies with the terms of a decree depends on that person’s present ability to comply with the decree.
 
 Wilborn v. Wilborn,
 
 258 So.2d 804, 805 (Miss.1972). “Where the contemnor is unable to pay, even if that present inability is due to his misconduct, imprisonment cannot accomplish the purpose of a civil contempt decree, which is to compel obedience.”
 
 Jones v. Hargrove,
 
 516 So.2d 1354, 1358 (Miss.1987) (citing Miss. Const. art. 3, § 30). But the defendant has the burden of proving his inability to pay and must make such showing with particularity and not in general terms.
 
 Clements v. Young,
 
 481 So.2d 263, 271 (Miss.1985).
 

 ¶ 31. Here, Chris’s claims of an inability to pay lacked independent corroboration. Chris prepared both the tax return and the business ledger, the only evidence he offered suggesting an inability to pay. Testimony at the divorce trial indicated that Chris was often paid in cash, and his prior statements regarding his income had lacked candor, at best. Moreover, prior to the divorce judgment, Chris had been paying a significant amount under the temporary order. But after the divorce, he immediately began paying less, suggesting an unwillingness rather than an inability to pay. We can find no abuse of discretion in the chancellor’s finding of contempt or award of attorney’s fees. This issue is without merit.
 

 CONCLUSION
 

 ¶ 32. We vacate the chancery court’s judgment with respect to child support and alimony, and we remand the case to that court for further proceedings consistent with this opinion. Otherwise, the chancellor’s judgment is affirmed.
 

 ¶ 33. THE JUDGMENT OF THE CHANCERY COURT OF SIMPSON COUNTY IS AFFIRMED IN PART AND VACATED AND REMANDED IN PART FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED EQUALLY BETWEEN THE APPELLANT AND THE APPELLEE.
 

 KING, C.J., LEE, P.J., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR.
 

 [1]
 

 . It was stated that this loan was used to pay for heart surgery for Kristy, but no further details were offered regarding the nature of her condition or treatment.
 

 [2]
 

 . UCCR 8.05.
 

 [3]
 

 . The chancellor's order also provided that child support would increase from $500 per month to $650 per month after Chris paid off Kristy’s vehicle.
 

 [4]
 

 . Chris also argues that the chancellor erred in ordering the child support to increase after Kristy's vehicle is paid off. Because we reverse and remand on the child support issue, we find these arguments moot.
 

 [5]
 

 .
 
 Armstrong v. Armstrong,
 
 618 So.2d 1278, 1280 (Miss.1993). The factors to be considered by the chancellor in arriving at findings and entering judgment for alimony are: (1) the income and expenses of the parties; (2) the health and earning capacities of the parties; (3) the needs of each party; (4) the obligations and assets of each party; (5) the length of the marriage; (6) the presence or absence of minor children in the home, which may require that one or both of the parties either pay, or personally provide, child care; (7) the age of the parties; (8) the standard of living of the parties, both during the marriage and at the time of the support determination; (9) the tax consequences of the spousal support order; (10) fault or misconduct; (11) wasteful dissipation of assets by either parly; or (12) any other factor deemed by the court to be "just and equitable” in connection with the setting of spousal support.
 

 [6]
 

 .
 
 Ferguson v. Ferguson,
 
 639 So.2d 921, 928 (Miss.1994).