# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-CA-01773-COA

**BRENDA HARNESS THORNTON**                                   **APPELLANT**

**v.**

**TIMOTHY TERRELL THORNTON SR.**                              **APPELLEE**

DATE OF JUDGMENT:              11/21/2016
TRIAL JUDGE:                   HON. WAYNE SMITH
COURT FROM WHICH APPEALED:     PIKE COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANT:        AMELIA SHA'METTA CARTER
ATTORNEY FOR APPELLEE:         EDWIN L. BEAN JR.
NATURE OF THE CASE:            CIVIL - DOMESTIC RELATIONS
DISPOSITION:                   REVERSED AND REMANDED - 08/14/2018
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE LEE, C.J., CARLTON AND WESTBROOKS, JJ.

### CARLTON, J., FOR THE COURT:

¶1.     On August 26, 2016, Tim and Brenda Thornton obtained a divorce in the Pike County Chancery Court. The chancellor entered an order distributing the marital property and awarding alimony to Brenda. Brenda appeals the chancellor's judgment and raises seven assignments of error: (1) whether the chancellor analyzed the factors set forth in *Ferguson v. Ferguson*, 639 So. 2d 921, 928 (Miss. 1994), when he distributed the marital property; (2) whether the chancellor erred in his distribution of Tim's Sanderson Farms retirement account; (3) whether the chancellor erred in not awarding Brenda lump sum alimony; (4) whether Brenda should be charged with paying the outstanding loan on a 2009 Dodge Ram; (5) whether the chancellor should have classified and equitably divided the $90,000

insurance policy; (6) whether the chancellor erred in crediting Tim with $1,600 in child support payments; and (7) whether the nature of the entire award by the chancellor can be considered equitable. Finding error, we reverse and remand the chancellor's judgment.

## FACTS

¶2. Tim and Brenda Thornton were married on February 26, 2000. They separated on June 9, 2014. Their union resulted in two children. Tim works as a supervisor at Sanderson Farms, and did so at the time of the chancellor's decision. Brenda is disabled and unemployed.

¶3. Brenda filed a motion for divorce on August 19, 2015, on the grounds of adultery or, in the alternative, habitual cruel and inhuman treatment, desertion, or irreconcilable differences. The trial court entered a temporary order on November 2, 2015, ordering Tim to pay child support in the amount of seven hundred dollars.

¶4. The matter was heard on August 3, 2016. While in chancery court, Tim's attorney disclosed to the court that Tim had committed adultery and was willing to admit those allegations to the court. A judgment was entered by the chancellor on August 26, 2016, granting Brenda a divorce on the ground of adultery. The chancellor also determined that Tim failed to pay the previously ordered child support on time and found him in contempt. Furthermore, the record reflects that the chancellor altered the child support payments to six hundred and seventy-eight dollars per month until the children reach the age of twenty-one or are emancipated.

¶5. The record reflects a lack of appraisal of the marital property by either party. During

the hearing on August 3, 2016, Tim agreed to Brenda's estimation of value for the marital home at $112,000.[1] The tax appraisal proposed by the new attorney of record for Brenda set the home's value at $56,699. The chancellor determined the value of the marital home to be $84,349.50, leaving the equity value of the home at $32,633.80.

¶6. The record indicates the chancellor listed and considered the marital property – both real and personal – in his determination of an equitable distribution. The chancellor ordered that $7,123.90 be transferred from Tim's retirement account to Brenda. Concerning the vehicles purchased during the marriage, the chancellor found that a 2000 Dodge Durango and a 2015 Chrysler 2000 would be the sole property of Tim, while Brenda would retain the 2009 Dodge Ram for her own personal property.

¶7. Concerning the parties' personal property, the chancellor divided it as follows:

(I) Timothy Thornton Sr.

| | | |
|---|---|---|
| A. | Samsung Refrigerator | $ 1,000.00 |
| B. | Bedroom/Living Room Set (purchased post-separation) | $ 1,200.00 |
| C. | Collectibles | $ 6,500.00 |
| D. | Airbrush Equipment | $ 1,500.00 |
| E. | Vizio Home System | $ 400.00 |
| F. | Craftsman Cutter and Weed Eater | $ 450.00 |
| G. | DVD Collection | $ 2,000.00 |
| H. | Car Stereo and Amp | $ 1,000.00 |

---

[1] This original figure was a typo in Brenda's financial statement. While the record reflects it was corrected by a line scratching through the amount, Tim still agreed that the home was valued at $112,000.

| I. | 2000 Dodge Durango | $ | 950.00 |
|---|---|---|---|
| | TOTAL | $ | 15,000.00 |

(II) Brenda Harness Thornton

| A. | Whirlpool Stove | $ | 200.00 |
|---|---|---|---|
| B. | 55" Samsung TV | $ | 400.00 |
| C. | Stainless Steel Refrigerator | $ | 300.00 |
| D. | 5 Bedroom Sets | $ | 3,000.00 |
| E. | Home Entertainment | $ | 400.00 |
| F. | Living Room Suite | $ | 1,500.00 |
| G. | 4 TVs | $ | 1,200.00 |
| H. | 2009 Dodge Truck (net value) | $ | 14,800.00 |
| | TOTAL | $ | 21,800.00 |

¶8.     While the record does reflect the chancellor's intention in distributing the marital property, the chancellor does not mention the factors set forth in *Ferguson*, 639 So. 2d at 928. Furthermore, the record is silent on the chancellor's reasoning behind the distribution except for one line of the judgment entered on August 26, 2016: "[T]he [c]ourt finds that based upon the testimony and the estimated values of personal and real property that the division is equitable. The [c]ourt also took into consideration the adulterous affair by [Tim]."

¶9.     Regardless of the omission of the *Ferguson* factors, the chancellor specifically outlined the *Hemsley* factors in the question of alimony. *Hemsley v. Hemsley*, 639 So. 2d at 909, 913 (Miss. 1994). The record reflects a thorough analysis of the factors under *Hemsley*, supporting the chancellor's decision to find that Brenda was entitled to permanent alimony in the amount of $200 per month.

¶10. On September 6, 2016, Brenda filed a timely motion to reconsider the judgment or to alter or amend the judgment pursuant to Mississippi Rules of Civil Procedure 52(b) and 59(e), respectively.[2] On October 31, 2016, Brenda filed a Rule 60(b) motion to set aside the judgment, claiming that Tim committed fraud on the court.

¶11. On November 10, 2016, the chancellor held a hearing on Brenda's motion to reconsider or to alter or amend the judgment. During the hearing, the chancellor declined to address Brenda's Rule 60(b) motion at that time, explaining that "you have to have a final judgment in place before you can set it aside."[3]

¶12. After the hearing, the chancellor entered an order on November 21, 2016, amending the final judgment in part. The chancellor deemed the child-support award to be inaccurate and amended the amount of child support to $737 per month.[4] After noticing his error in not setting forth a start date for child-support payments, the chancellor ordered that the child-support payments be made on the first day of each month. The chancellor also increased the award of permanent alimony to $250 per month. Regarding Brenda's Rule 60(b) motion, the chancellor opined that it was not ripe for hearing in his opinion and therefore postponed ruling on the motion.

---

[2] Three days later, on September 9, 2016, Brenda filed an amended motion to reconsider the judgment or to alter or amend the judgment.

[3] The record reflects that at the time that Brenda filed her Rule 60(b) motion, her motion to reconsider or alter or amend the judgment was still pending before the chancellor, and therefore the judgment was not final. Rule 60(b) provides an avenue for relief from a *final* judgment.

[4] After review of the prior order, the chancellor found that it failed to add Tim's net pay to the initial order granting child support.

¶13. Regarding the issues not specifically addressed in his order, the chancellor held that "all remaining terms and provisions of the [j]udgment dated August 26, 2016 will remain in full force and effect."

¶14. On December 1, 2016, Brenda filed a petition asking that the chancellor find Tim in contempt of court. Brenda claimed that Tim failed to provide her with the transportation she was ordered to receive in the temporary order and failed to pay her attorney's fees in the sum of $4,000. Furthermore, Brenda claimed that Tim failed to pay any child support or alimony for the months of September, October, November, or December of 2016, leaving him in arrears in the amount of $2,948 for child support and $1,000 for alimony.

¶15. On December 19, 2016, Brenda filed a timely notice appealing the chancellor's August 26, 2016 final judgment and the November 21, 2016 order partially amending the judgment.[5]

¶16. On April 7, 2017, several months after Brenda filed her notice of appeal in this matter, the chancellor entered an order determining that Tim was not in contempt and declining to

_____

[5] Mississippi Rule of Appellate Procedure 4(a) requires that a notice of appeal be filed "within 30 days after the date of entry of the judgment or order appealed from." However, Mississippi Rule of Appellate Procedure 4(d) states that if a party timely files a Rule 52(b) motion to amend or make additional findings of facts, a Rule 59 motion to alter or amend the judgment, or a motion for relief pursuant to Rule 60, if the motion is filed no later than ten days after the entry of judgment, then the time for appeal "runs from the entry of the order disposing of the last such motion outstanding." Brenda timely filed her motion to reconsider the judgment or to alter or amend the judgment within ten days of the chancellor's judgment, which "tolls the thirty-day time period to file a notice appeal until disposition of the motion by the trial court." *Ford v. Miss. Dep't of Human Servs.*, 158 So. 3d 1241, 1244 (¶8) (Miss. Ct. App. 2015) (¶8). After the chancellor entered his order disposing of Brenda's motion to reconsider the judgment, Brenda filed her notice of appeal within thirty days.

6

rule on Brenda's Rule 60(b) motion.

## STANDARD OF REVIEW

¶17. The Mississippi Supreme Court has long held that a chancellor's findings of fact will not be disturbed unless they are manifestly wrong or clearly erroneous. *Sanderson v. Sanderson*, 824 So. 2d 623, 625 (¶8) (Miss. 2002). Specifically in cases concerning alimony, the chancellor's decision "will not be disturbed on appeal unless it is found to be against the overwhelming weight of the evidence or manifestly in error." *Tilley v. Tilley*, 610 So. 2d 348, 351 (Miss. 1992). Likewise, when the equitable division of the marital estate is at issue, the Court has determined that "the chancellor's ruling on the division and distribution will be upheld if it is supported by substantial creditable evidence." *Mabus v. Mabus*, 890 So. 2d 806, 824 (¶72) (Miss. 2003).

## DISCUSSION

¶18. As stated, Brenda presents seven issues on appeal: (1) whether the chancellor analyzed the factors set forth in *Ferguson* when he distributed the marital property; (2) whether the chancellor erred in his distribution of Tim's Sanderson Farms retirement account; (3) whether the chancellor erred in not awarding Brenda lump sum alimony; (4) whether Brenda should be charged with paying the outstanding loan on the 2009 Dodge Ram; (5) whether the chancellor should have classified and equitably divided the $90,000 insurance policy; (6) whether the chancellor erred in crediting Tim with $1,600 in child-support payments; (7) whether the nature of the entire award by the chancellor can be considered equitable.

¶19.     In her appellate brief, Brenda refers to issues set forth in an order entered by the chancellor nearly four months after she filed her notice of appeal. In this April 7, 2017 order, the chancellor declined to rule on Brenda's Rule 60(b) motion in which Brenda asserted that Tim committed fraud upon the court regarding the loan on the 2009 Dodge Ram and also denied her petition asking that the chancellor find Tim in contempt. The chancellor declined to rule on the Rule 60(b) motion and stated that he "would hear the Rule 60(b) [motion] after it returns from the appellate court."

¶20.     Mississippi Rule of Appellate Procedure 3(c) requires the notice of appeal to designate as a whole or in part the judgment or order from which appealed.[6] Although Brenda's notice of appeal only specifies that she is appealing the final judgment and order partially granting her motion for reconsideration, Brenda's appellate brief also discusses issues pertaining to her Rule 60(b) motion and petition for contempt. The chancellor disposed of Brenda's petition for contempt in an order entered after Brenda filed her notice of appeal.

¶21.     "Ordinarily, once a notice of appeal is filed, jurisdiction transfers from the trial court to the appellate court, thereby removing the trial court's authority to amend, modify, or reconsider its judgment." *McNeese v. McNeese*, 129 So. 3d 125, 128 (¶7) (Miss. 2013). However, Rule 60 "confer[s] limited concurrent jurisdiction on the trial court to grant relief from a judgment even though an appeal has been perfected." *Id*. at (¶8) (internal quotation

---

[6] However, we recognize that the Mississippi Supreme Court has held that if the appellant's statement of issues and brief "clearly show the basis for the appeal, then the issue can be addressed on the merits." *Herndon v. Miss. Forestry Comm'n*, 67 So. 3d 788, 795 (¶9) (Miss. Ct. App. 2010) (citing *Fletcher v. Lyles*, 999 So. 2d 1271, 1277 (¶25) (Miss. 2009)).

marks omitted) (quoting *Griffin v. Armana*, 679 So. 2d 1049, 1050 (Miss. 1996)). As long as a party complies with the requirements of Rule 60(b), the trial court retains authority to entertain a Rule 60(b) motion in the action, even after a notice of appeal has been filed. *Id*. Brenda timely filed her Rule 60(b) motion in the trial court "not more than six months after the judgment." M.R.C.P. 60(b); *McNeese*, 129 So. 3d at 128 (¶8).[7] Accordingly, the chancellor herein maintained jurisdiction to rule on Brenda's Rule 60(b) motion. The supreme court has held that in cases "where . . . the Rule 60 motion is filed and disposed of within the time allowed for appeal from the underlying judgment and the notice of appeal speaks to the judgment and the order disposing of the motion, one notice of appeal is sufficient to bring to this court both the judgment and the Rule 60 order." *Brame v. Brame*, 796 So. 2d 970, 973 (¶11) (Miss. 2001). However, because the chancellor declined to rule on the Rule 60(b) motion after Brenda filed her notice of appeal, Brenda's related assignments of error are not properly before us and should have been raised in a separate notice of appeal. *Id*.

¶22. Additionally, regarding Brenda's assignment of error attacking the chancellor's ruling on her petition for contempt, we recognize that "[a]lthough contempt proceedings in divorce cases often are filed in the same cause number and proceed with the underlying divorce case, they are held to be separate actions, requiring new and special summons under Mississippi Rules of Civil Procedure 81." *Shavers v. Shavers*, 982 So. 2d 397, 402 (¶25) (Miss. 2008).

---

[7] Brenda's Rule 60(b) motion therefore "[did] not toll . . . the enforceability of [the] judgment" before us on appeal. *Ice Plant Inc. v. Grace*, 133 So. 3d 379, 382 (¶5) (Miss. Ct. App. 2014) (quoting *Sweet Valley Missionary Baptist Church v. Alfa Ins. Corp.*, 124 So. 3d 643, 645 (¶9) (Miss. 2013)).

We therefore find that Brenda's argument regarding the contempt proceedings is not properly before this Court because "the contempt action [is] separate from the divorce judgment cited in the notice of appeal." *Williamson v. Williamson*, 81 So. 3d 262, 277 (¶34) (Miss. Ct. App. 2012). We now turn to address Brenda's other issues before us on appeal.

¶23. Brenda's remaining claims are extensive and overlapping. Because issues 1, 2, and 5 all hinge on the chancellor's distribution of property under *Ferguson*, we will consider them together as one issue. Brenda first claims that the chancellor failed to consider her contributions as a homemaker and breadwinner in the property distribution because the chancellor failed to provide on-the-record findings as to the *Ferguson* factors. She further claims that this led to the chancellor failing to properly categorize and divide the Sanderson Farms retirement account and insurance policy valued at $90,000. Additionally, Brenda claims that this omission of a proper *Ferguson* analysis leaves the chancellor's distribution in question on the grounds of equity. Finally, Brenda claims that she should not be charged with the $4,000 remaining loan on the 2009 Dodge Ram that she was awarded in the divorce.

¶24. The record reveals that although the chancellor articulated the factors in tests like *Albright v. Albright*, 437 So. 2d 1003, 1005 (Miss. 1983), and *Hemsley*, 639 So. 2d at 913, when determining child custody and alimony, the record does not indicate any specific analysis by the chancellor regarding the factors set forth in *Ferguson* to support the chancellor's equitable division of marital property or the findings set forth. As a result, the record fails to show how the chancellor applied the law and factors to the facts of this case when dividing the marital property. The judgment entered on August 26, 2016, simply states:

"The [c]ourt finds that based upon the testimony and the estimated values of personal and real property that the division is equitable. The [c]ourt also took into consideration the adulterous affair by [Tim]," but there is no mention of the specific factors. While the chancellor distributed the property in the judgment, the chancellor failed to provide any on-the-record findings or analysis utilizing the *Ferguson* factors to explain how he came to his distribution and for this Court to review on appeal.

¶25. The Mississippi Supreme Court has dealt with issues involving the failure of chancellors to conduct on-the-record analysis of factor-based tests. *Lowrey v. Lowrey*, 25 So. 3d 274, 280 (¶7) (Miss. 2009). Specifically, *Lowrey* held as follows:

> Factor tests, such as provided in *Ferguson* for property division and *Armstrong* [*v. Armstrong*, 618 So. 2d 1278, 1280 (Miss. 1993)] for alimony, must be considered on the record in every case . . . [t]hese factor considerations are not only essential for appellate purposes, but also for trial courts, as they provide a checklist to assist in the accuracy of their rulings. Following these guidelines reduces unintended errors that may affect the court's ultimate decision. The absence of an analysis of these factors and failure to apply the law to the facts at hand create error.

*Lowrey*, 25 So. 3d at 280 (¶7) (citations omitted); *see generally Heimert v. Heimert*, 101 So. 3d 181 (Miss. Ct. App. 2012).

¶26. While the supreme court has determined that these factor tests serve as a check-list in determining their rulings, the court has also said that "not every case requires consideration of all eight of the [*Ferguson*] factors." *Owen v. Owen*, 798 So. 2d 394, 399 (¶13) (Miss. 2001); *see also Vassar v. Vassar*, 228 So. 3d 367, 378 (¶40) (Miss. Ct. App. 2017) (holding that failure to address any *Ferguson* factors was error that required reversal)*; Lee v. Lee*, 78 So. 3d 326, 329 (¶10) (Miss. Ct. App. 2012). This Court found in *Seghini v.*

11

*Seghini*, 42 So. 3d 635, 641 (¶21) (Miss. Ct. App. 2010), that a chancellor's "failure to make an explicit factor-by-factor [*Ferguson*] analysis does not necessarily require reversal where we are satisfied that the chancellor considered the relevant facts."

¶27. Regardless of the fact that the chancellor in this matter considered the distribution of marital property in the judgment, the record reflects no findings or recognition of the factors set forth in *Ferguson* and their applicability in the distribution of marital property in this case. Even though this Court has found that the specific analysis demanded in *Lowrey* is not always appropriate, the record is silent as to the chancellor's basis, relative to the *Ferguson* factors, for the distribution of marital property in this case.

¶28. Because the record lacks sufficient *Ferguson* findings to allow for appellate review of the chancellor's equitable division of marital property, we reverse and remand the chancellor's judgment.

¶29. Brenda also claims that the chancellor erred in failing to award her lump sum alimony. This Court has held that in a divorce proceeding, "[t]he final step requires that the chancellor decide if an equitable division of marital property, considered with each party's nonmarital assets, leaves a deficit for one party; if so, then alimony should be considered." *Rodrigue v. Rodrigue*, 172 So. 3d 1176, 1187 (¶42) (Miss. Ct. App. 2014). Furthermore, this court has considered that alimony and the equitable distribution of marital property are "distinct concepts, but together they command the entire field of financial settlement of divorce. Therefore, where one expands, the other must recede." *Strickland v. Strickland*, 102 So. 3d 1216, 1221 (¶12) (Miss. Ct. App. 2012) (citing *Lauro v. Lauro*, 847 So. 2d 843, 848 (¶13)

(Miss. 2003)).

¶30.    In order for the chancellor to properly award alimony, he must first complete a proper equitable division of the marital estate to determine if either spouse suffers a deficit that would warrant an award of alimony. *See Strickland*, 102 So. 3d at 1221 (¶12); *Lowrey*, 25 So. 3d at 292 (¶44); *Godwin v. Godwin*, 758 So. 2d 384, 387 (¶9) (Miss. 1999) (holding that "after an equitable division of [marital] property, the final step the chancellor must complete is a consideration of the need, if any, for alimony"). In the present scenario, because the chancellor failed to provide adequate findings to support his *Ferguson* analysis in the equitable distribution of marital property, it is unclear to us whether Brenda is entitled to lump sum alimony and if any amount awarded is appropriate. We therefore reverse and remand this case to the chancellor for further proceedings consistent with this opinion.

¶31.    **REVERSED AND REMANDED.**

**LEE, C.J., IRVING, P.J., BARNES, WESTBROOKS AND TINDELL, JJ., CONCUR. WILSON, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. GRIFFIS, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY FAIR AND GREENLEE, JJ.**

**GRIFFIS, P.J., DISSENTING:**

¶32.    This Court is not required to reverse a chancellor's "failure to make an explicit factor-by-factor [*Ferguson*] analysis . . . where we are satisfied that the chancellor considered the relevant facts." *Seghini v. Seghini*, 42 So. 3d 635, 641 (¶21) (Miss. Ct. App. 2010). The majority and I seem to agree that the "relevant facts" require a certain substance – those facts drawn from considering the relevant *Ferguson* factors when dividing the marital assets. *See Ferguson v. Ferguson*, 639 So. 2d 921, 928 (Miss. 1994). Yet, we disagree on how that

13

substance appears in the chancellor's division of marital property in the record, or in the majority's opinion, if that substance appears in the record.

¶33. The majority finds that the chancellor *extensively considered* the distribution of marital property, and I agree. But, the majority fails to determine that this satisfies "consider[ing] the relevant facts." *Seghini*, 42 So. 3d at 641 (¶21). Essentially the majority determines to reverse the chancellor's judgment because the record lacks explicit and specific mention to any of the *Ferguson* factors. *See Ferguson*, 639 So. 2d at 928. With this reasoning, the majority finds that the chancellor's judgment cannot reflect a consideration of the relevant *Ferguson* factors without explicitly analyzing them on the record. *Id.*

¶34. This Court has the authority to review the record to determine if the chancellor's division recognizes a consideration of the substance intended by the *Ferguson* factors, even absent an explicit *Ferguson*-factor analysis. *Seghini*, 42 So. 3d at 641 (¶21). Thus, in reviewing, I find that the chancellor's extensive consideration reflects this, although he does not explicitly mention these factors on the record.

¶35. Similar to this Court's determination in *Seghini*, the record supports that the chancellor extensively considered the estimated value of the marital assets based on the parties' 8.05 financial statements. *See Seghini*, 42 So. 3d at 641 (¶21) (finding that chancellor did consider relevant facts when he considered marital property provided on parties' 8.05 financial statements, property's estimated value, and whether parties disputed that property was marital). The record also indicates that the chancellor heard extensive testimony regarding the parties' economic and domestic contributions to the marriage,

14

financial and health needs, disability, tax consequences, and contributions to the stability of the home and marriage.

¶36.    The *Lowrey* requirement intends "to assist in the accuracy of [the trial court's] rulings . . . [and] reduce[] unintended errors that may affect the court's ultimate decision." *Lowrey v. Lowrey*, 25 So. 3d 274, 280 (¶7) (Miss. 2009). In our case, the parties shared less than twenty marital assets, and they provided valuations to nearly all assets listed on the respective 8.05 financial statements. This together with the extensive trial testimony indicates that it was not necessary for the chancellor to conduct a full, on-the-record *Ferguson* analysis to convey his substantial consideration of those factors. Remanding this case for the chancellor to write out his analysis of the *Ferguson* factors will be a wasteful and unnecessary exercise.

¶37.    I respectfully find that reversal is not warranted, and thus remand is judicially inefficient. I would affirm the chancellor's judgment.

**FAIR AND GREENLEE, JJ., JOIN THIS OPINION.**