# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-CA-01524-COA

**BRENDA HARNESS THORNTON**                         **APPELLANT**

**v.**

**TIMOTHY TERRELL THORNTON SR.**               **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 10/16/2019 |
| TRIAL JUDGE: | HON. WAYNE SMITH |
| COURT FROM WHICH APPEALED: | PIKE COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | AMELIA SHA'METTA CARTER |
| ATTORNEY FOR APPELLEE: | EDWIN L. BEAN JR. |
| NATURE OF THE CASE: | CIVIL - CUSTODY |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND REMANDED IN PART - 06/08/2021 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE CARLTON, P.J., LAWRENCE AND SMITH, JJ.

### SMITH, J., FOR THE COURT:

¶1. This is the second appeal arising from the Pike County Chancery Court's grant of a divorce to Brenda and Timothy (Tim) Thornton. *See Thornton v. Thornton*, 270 So. 3d 186 (Miss. Ct. App. 2018). In her current appeal, Brenda argues the chancellor erred by (1) denying her amended motion under Mississippi Rule of Civil Procedure 60(b) to set aside the divorce judgment; (2) denying the costs awarded to her during the first appeal; (3) failing to recuse from the case; (4) modifying child custody as to the parties' younger son; (5) holding her in contempt for various conduct but denying her contempt claim against Tim; and (6) appointing a special commissioner to review her phone calls and text messages.

¶2. Upon review, we find the chancellor erred by denying Brenda's amended Rule 60(b) motion as untimely. We therefore reverse the denial of Brenda's amended Rule 60(b) motion on that basis. Because Brenda's attorney made a proffer of the testimony and evidence she had planned to present in support of the amended Rule 60(b) claims, we find the issue has been fully preserved for review. Thus, on remand the chancellor should consider the parties' evidence regarding the amended Rule 60(b) claims and rule on the merits in disposing of those claims. With regard to all other remaining assignments of error, we find no error and affirm.

**FACTS**

¶3. Brenda and Tim were married in February 2000, and they separated in June 2014. *Thornton*, 270 So. 3d at 188 (¶2). During the course of their marriage, the parties had two sons—T.T. (born in 2001) and J.T. (born in 2008).[1] On August 19, 2015, Brenda filed for a divorce on the ground of adultery. *Id.* at (¶3). She alternatively sought a divorce on the grounds of habitual cruel and inhuman treatment, desertion, or irreconcilable differences. *Id.* On August 26, 2016, the chancellor granted Brenda a divorce on the ground of adultery. *Id.* at (¶4). The chancellor noted in his judgment that T.T., who was then fifteen years old, had elected to live with Brenda. The chancellor awarded Brenda sole physical custody of both children and awarded Tim visitation. The chancellor also awarded the parties joint legal custody of the children. Brenda appealed from the chancellor's final judgment and his subsequent order partially amending the final judgment. *Id.* at 190 (¶15).

---

[1] We use initials to protect the children's privacy.

¶4. On appeal, Brenda raised seven assignments of error. *Id.* at 191 (¶18). Upon review, this Court concluded that "the record lack[ed] sufficient *Ferguson*[2] findings to allow for appellate review of the chancellor's equitable division of marital property . . . ." *Id.* at 193 (¶28). We further concluded that the chancellor needed to "complete a proper equitable division of the marital estate" before making any determination regarding alimony. *Id.* at 194 (¶30). We therefore reversed the chancellor's judgment and remanded the case on August 14, 2018, for further proceedings. *Id.*

¶5. Both during the pending appeal before this Court and after our remand to the chancery court, the parties filed numerous additional motions. Relevant to this appeal, Brenda filed a Rule 60(b) motion to set aside the divorce judgment. *Id.* at 190 (¶10). She subsequently filed an amended Rule 60(b) motion. The chancellor ultimately granted Brenda partial relief on her original Rule 60(b) motion but denied her amended Rule 60(b) motion. Also relevant to the present appeal are Brenda's claims that the chancellor erroneously denied the costs awarded to her from the first appeal and improperly appointed a special commissioner to search the parties' cell phones; her unsuccessful motion for the chancellor's recusal; Tim's successful motion to modify child custody as to the parties' younger son, J.T., and to terminate his monthly alimony payments; and both parties' various contempt claims against the other party. With regard to the various contempt claims, the chancellor held Brenda in contempt for multiple violations and awarded related attorney's fees to Tim. The chancellor declined, however, to likewise hold Tim in contempt for his alleged violation.

---

[2] *Ferguson v. Ferguson*, 639 So. 2d 921, 928 (Miss. 1994).

¶6. Aggrieved by the chancellor's rulings, Brenda appeals.

**STANDARD OF REVIEW**

¶7. "This Court will not disturb a chancellor's judgment when it is supported by substantial credible evidence unless the chancellor abused his discretion, was manifestly wrong or clearly erroneous, or applied an erroneous legal standard." *Gilmer v. Gilmer*, 297 So. 3d 324, 331 (¶13) (Miss. Ct. App. 2020) (quoting *Branch v. Branch*, 174 So. 3d 932, 937 (¶9) (Miss. Ct. App. 2015)). We review issues of law de novo. *Id.*

**DISCUSSION**

**I. Amended Rule 60(b) Motion**

¶8. Brenda challenges the chancellor's finding that her amended Rule 60(b) motion to set aside the divorce judgment was untimely filed. We review the chancellor's denial of a Rule 60(b) motion for abuse of discretion. *McChester v. McChester*, 300 So. 3d 1035, 1039 (¶16) (Miss. Ct. App. 2020).

¶9. In the August 26, 2016 divorce judgment, the chancellor awarded Brenda a 2009 Dodge Ram truck. The Rule 8.05[3] financial statement Tim had submitted during the divorce proceedings identified the truck's total value as $14,000, with about $4,000 still due on the loan. In awarding Brenda the truck, as well as responsibility for all payments for the truck's loan, insurance, and upkeep, the chancellor relied on the information provided in Tim's financial statement.

¶10. "On October 31, 2016, Brenda filed a Rule 60(b) motion to set aside the judgment,

---

[3] UCCR 8.05.

4

claiming that Tim [had] committed fraud on the court." *Thornton*, 270 So. 3d at 190 (¶10). Brenda asserted that Tim had misrepresented and undervalued the truck's total loan amount and had used the truck as collateral to secure another loan. Brenda further asserted that Tim had used $4,000 of the loan amount to pay his attorney's fees. Brenda contended Tim had known when he submitted the financial statement that more than $4,000 was owed on the truck and that he had therefore committed fraud upon the court. In addition to seeking reimbursement for the $4,000 Tim had obtained to pay his attorney's fees, Brenda argued that the chancellor should require Tim to pay any other outstanding balance owed on the truck. She also requested that the chancellor award her the attorney's fees and costs associated with bringing her Rule 60(b) motion. Because Brenda filed her Rule 60(b) motion within six months after the entry of the divorce judgment, this Court determined during the first appeal that the motion was timely. *Id.* at 192 (¶21). We noted, however, that the chancellor had declined to rule on Brenda's Rule 60(b) motion while the first appeal was still pending. *Id.* at 191 (¶19).

¶11. On August 14, 2018, this Court remanded the parties' case to the chancery court. During a hearing held on November 13, 2018, the chancellor noted on the record that the parties agreed Tim had misrepresented the truck's debt as $4,000 at the time of the divorce hearing and that the actual debt amounted to $9,862.84. Although the chancellor stated during the hearing that he would grant Brenda's Rule 60(b) motion, no such subsequent order appears in the record.

¶12. On April 10, 2019, Brenda filed an amended Rule 60(b) motion to set aside the

5

divorce judgment. In addition to the arguments raised in her original motion, which had not yet been granted or denied by any order, Brenda's amended motion asserted that Tim had received a $2,000 cash advance on the same loan he secured by using the 2009 Dodge Ram as collateral. Brenda alleged that Tim had received the $2,000 loan advance on August 19, 2016, which was after the August 3, 2016 divorce proceeding but prior to the entry of the chancellor's August 26, 2016 divorce judgment. Brenda asked that the chancellor order Tim to not only pay all costs and attorney's fees associated with her original and amended Rule 60(b) motions but to also repay the $4,000 he had obtained to pay his attorney's fees and the $2,000 cash advance he had received on the same loan.

¶13. On August 16, 2019, the chancellor entered an order requiring Tim to pay Brenda $4,000. Tim filed an August 21, 2019 motion and asked the chancellor to stay his order regarding the $4,000 until the chancellor had ruled on Tim's various petitions seeking contempt, child-custody modification, and monetary relief. By his order entered August 29, 2019, the chancellor granted Tim's motion to stay the order requiring the $4,000 payment to Brenda until he had also heard Tim's various petitions seeking monetary relief.

¶14. On October 15, 2019, the chancellor conducted the final hearing prior to the present appeal. In addressing Brenda's amended Rule 60(b) motion, the chancellor concluded that the amended motion was untimely filed and that the claims should have been raised in a contempt action. Although he denied the amended Rule 60(b) motion, the chancellor allowed Brenda's attorney to make a proffer regarding the supporting evidence she had planned to present. The chancellor memorialized the denial of Brenda's amended Rule 60(b)

motion by his final order entered October 16, 2019.

¶15.    As she argued before the chancellor, Brenda asserts on appeal that she properly brought her amended motion under Rule 60(b)(6).  Brenda further asserts that under Mississippi Rule of Civil Procedure 15(c), the amended Rule 60(b)(6) motion related back to the filing date of her timely filed original motion.  She therefore contends that the chancellor erred by denying the amended motion.

¶16.    Mississippi Rule of Civil Procedure 7 distinguishes between pleadings and motions. M.R.C.P. 7(a)-(b).  Rule 7(a) defines allowable pleadings, and Rule 7(b) makes clear that motions are different from pleadings.  *Id.*; *see also Transfer of Structured Settlement Payment Rights by Saucier v. Saucier*, 207 So. 3d 689, 693 (¶9) (Miss. Ct. App. 2016) ("Rule 7 clearly limits parties to the described type and number of pleadings.  A motion is not a pleading . . . .").  Rule 15(c)(1) allows for the "relat[ion] back" of amended *pleadings* "to the date of the original pleading."  Here, though, Brenda filed an amended *motion*.  Thus, we find no merit to Brenda's argument that Rule 15(c) applied to her amended Rule 60(b)(6) motion and allowed the amended motion to relate back to the date of her timely filed original Rule 60(b) motion.

¶17.    We do agree, however, that the chancellor should have considered the merits of Brenda's amended motion claims under Rule 60(b)(6)'s "catch-all" provision, which provides relief "in exceptional and compelling circumstances, such as for fraud upon the court."  *Trim v. Trim*, 33 So. 3d 471, 475 (¶7) (Miss. 2010).  In *Trim*, the Mississippi Supreme Court recognized that "[a] Rule 8.05 statement is a mandatory filing with the

7

chancery court" and held "that a party's intentional filing of a substantially false Rule 8.05 financial statement constitutes a fraud on the court." *Id.* at 477-78 (¶¶16-17). The supreme court explained that "Rule 60(b) provides that the rule does not limit the court's power . . . 'to set aside a judgment for fraud upon the court.'" *Id.* at 477 (¶15) (quoting M.R.C.P. 60(b)). Rather, "no time limit" applies "to the [chancellor's] ability to remedy the fraud by modifying the final judgment of divorce." *Id.* at 479 (¶21).

¶18. Here, Brenda argued that Tim first committed a fraud upon the court when he knowingly provided an incorrect Rule 8.05 financial statement that failed to disclose the $4,000 loan he had secured by using the 2009 Dodge Ram as collateral. Brenda contended that Tim then continued to perpetuate a fraud upon the court when he obtained a $2,000 cash advance on the same loan without updating his already incorrect Rule 8.05 financial statement. Because Brenda's amended motion alleged a fraud upon the court under Rule 60(b)(6), and because "no time limit" applies "to the [chancellor's] ability to remedy [a] fraud" upon the court, we find the chancellor erred by failing to consider the claims raised in Brenda's amended motion. *Id.*

¶19. Based on these findings, we hold that the chancellor abused his discretion by denying Brenda's amended Rule 60(b)(6) motion as untimely. As the record reflects, Brenda's attorney fully preserved the issue for appeal by making a proffer of the testimony and evidence she had planned to present in support of the claims raised in the amended Rule 60(b)(6) motion. Accordingly, we reverse the chancellor's denial of Brenda's amended Rule 60(b)(6) motion as untimely and remand so that the chancellor can consider the parties'

evidence and rule upon the merits of the claims raised in Brenda's amended motion.

## II. Appeal Costs

¶20. Brenda argues the chancellor erroneously denied her the costs awarded to her from the first appeal. During the October 15, 2019 hearing, Brenda's attorney addressed the motion she had filed for the costs associated with the first appeal. Brenda's attorney informed the chancellor that she was withdrawing the motion and would submit a bill to Tim's attorney since this Court had already determined Brenda's entitlement to the costs. In his subsequent order entered on October 16, 2019, the chancellor noted that Brenda's attorney had orally withdrawn the motion on the record. The chancellor further stated that he was denying the motion simply because Brenda had not presented the bill for costs to Tim at that time. Although Brenda argues on appeal that the chancellor's ruling precludes her from collecting the costs from the first appeal, we find nothing to support this assertion.

¶21. The chancellor denied Brenda's withdrawn cost motion simply because Brenda never presented any bill to Tim. Once Brenda presents a bill for the costs of the first appeal, our caselaw establishes that Tim possesses no discretion regarding whether to pay the appellate costs, and the chancellor possesses no discretion regarding whether to follow our mandate. *See Griner v. Griner*, 282 So. 3d 1243, 1247 (¶¶12-13) (Miss. Ct. App. 2019). We recognize, however, "that while the mandate must be strictly followed, there remains the opportunity to later dive into what costs were actually incurred or should be paid per the mandate, since a party 'who seeks relief as to any other matter involving costs shall seek relief in the trial court.'" *Id.* at 1247 n.2 (quoting M.R.A.P. 36(c)). Because Brenda has not

yet presented any bill regarding the costs she incurred in pursuing the first appeal, we find this assignment of error lacks merit.

### III. Recusal Motion

¶22. Brenda also argues the chancellor erred by denying her motion to recuse. Following the parties' divorce, Brenda created a Go Fund Me account online and posted comments about Tim, Tim's attorney, and the chancellor. In relevant part, Brenda stated that she "was treated unfairly by a bias[ed] [j]udge . . . [and that o]ne thing that was unfair about his ruling is [that] I'm being forced to take on a loan that my ex[-husband] made after the truck was paid off." During a hearing on July 26, 2018, Tim introduced Brenda's Go Fund Me page into evidence to show Brenda had contravened the divorce judgment's directive for neither parent to "speak or act in a derogatory or disrespectful manner concerning the other parent." Brenda moved for the chancellor's recusal based on the evidence about her Go Fund Me page. Brenda stated she felt her online comments would affect the chancellor's ability to remain unbiased when determining the issues before him. The chancellor, however, emphasized that Brenda's Go Fund Me page and comments would have no effect on his rulings and that he would continue to base any rulings on the evidence and caselaw. He therefore denied Brenda's recusal motion.

¶23. In discussing when a judge should recuse from a matter, the supreme court recently explained:

> Canon 3 of the Code of Judicial Conduct places a burden on courts to use an objective standard in deciding whether a judge should have disqualified themselves from hearing a case. A judge is required to disqualify himself if a reasonable person, knowing all of the circumstances, would harbor doubts

about his impartiality. A trial judge is presumed to be qualified and unbiased, and the presumption may only be overcome by evidence creating a reasonable doubt about the validity of the presumption. When a judge is not disqualified under the constitutional or statutory provisions[,] the decision is left up to each individual judge and is subject to review only in the case of manifest abuse of discretion. Furthermore, the Court has stated that[ i]n the absence of a judge expressing a bias or prejudice toward a party or proof in the record of such bias or prejudice, a judge should not recuse himself. The burden, which is a heavy one, is on the movant to prove facts sufficient to establish disqualifying bias or prejudice.

*Pearl River Cnty. Bd. of Supervisors v. Miss. State Bd. of Educ.*, 289 So. 3d 301, 308-09 (¶25) (Miss. 2020) (citations and internal quotation marks omitted).

¶24. Upon review, we find Brenda has failed to overcome the presumption that the chancellor was unbiased and acted impartially. Because Brenda has not set forth sufficient facts to show that the chancellor should have recused from the parties' case, we find no manifest error in the chancellor's denial of her motion. We therefore conclude that this issue lacks merit.

### IV.    Child-Custody Modification

¶25. Brenda challenges the chancellor's modification of custody with regard to the parties' younger son, J.T. Brenda contends that Tim failed to prove a material change in circumstances that adversely affected J.T. She also asserts that the evidence failed to support certain factual findings made by the chancellor and that the chancellor erred by allowing Tim to claim J.T. as a dependent for income-tax purposes. As a result of these alleged errors, Brenda asks this Court to reverse the chancellor's grant of physical custody of J.T. to Tim.

### A.    Adverse Material Change

¶26. To obtain a custody modification, the noncustodial parent must establish (1) that a

11

substantial or material change in circumstances has occurred in the custodial home since the custody decree, (2) that the change adversely affects the child, and (3) that custody modification serves the child's best interests. *Domke v. Domke*, 305 So. 3d 1233, 1239-40 (¶16) (Miss. Ct. App. 2020). The moving party "bears the burden of proof by a preponderance of the evidence." *Id.* at 1240 (¶16) (quoting *Warner v. Thomas*, 281 So. 3d 216, 222 (¶18) (Miss. Ct. App. 2019)). As we explained in *Domke*,

> In analyzing whether a material change of circumstances has occurred, the chancellor must consider the totality of the circumstances. Where a party proves that an adverse substantial or material change has occurred, the chancellor must then perform an *Albright*[4] analysis to determine whether modification of custody is in the child's best interest. However, if there has been no material, adverse change in circumstances, the *Albright* factors need not be addressed.

*Id.* at (¶17) (citations and internal quotation marks omitted).

¶27. Following a hearing on custody modification and termination of alimony, the chancellor found that Tim had proved the following by a preponderance of the evidence: (1) Brenda was in a de facto marriage with her boyfriend Randy Jones; (2) Brenda's relationship with Jones justified the termination of Tim's monthly alimony payments; and (3) a substantial and material change in circumstances adverse to the parties' minor children had occurred in Brenda's home since the entry of the divorce judgment. With regard to his finding that an adverse material change had occurred, the chancellor placed great emphasis on the children's exposure to Jones, a felon; J.T.'s failing grades; and Brenda's failure to comply with the joint legal-custody obligations she owed to Tim.

---

[4] *Albright v. Albright*, 437 So. 2d 1003, 1005 (Miss. 1983).

¶28.    Tim presented evidence that after the parties' divorce, Brenda had begun a serious relationship with Jones, who had a prior felony conviction for armed robbery and aggravated assault. Tim subpoenaed Jones to testify, but Jones failed to appear at the hearing. Following Jones's second failure to respond to the subpoena, the chancellor issued a bench warrant for Jones's arrest. Upon questioning, Jones and Brenda provided conflicting testimony as to the nature and full extent of their relationship. The testimony of both witnesses reflected, however, that Jones spent considerable time at Brenda's home and exerted a great deal of influence over the parties' children.

¶29.    In addition to expressing concern over the children's exposure to Jones, the chancellor found that the children had demonstrated increased academic problems since the divorce and that Brenda had violated Tim's right to joint legal custody. The evidence established that after the divorce, Brenda failed to identify Tim as a parent or emergency contact on the children's school-enrollment and emergency-contact forms. Due to Brenda's actions, Tim had to provide proof that he was a legal guardian and shared joint legal custody with Brenda before the children's schools would discuss their grades and conduct with him. Brenda also admitted that while she completely omitted Tim's name and contact information from the school forms, she identified Jones as the children's stepfather and provided his phone number for emergency-contact purposes. Tim's evidence further showed that Brenda failed to inform him of multiple school-related concerns regarding the children, such as J.T.'s falling grades and T.T.'s disciplinary issues. In addition, Tim testified that without his knowledge or consent, Brenda had enrolled J.T. in a school located in another district. Tim stated that he

13

only learned about the improper school enrollment when a conflict with his summer visitation arose. Moreover, Tim presented evidence that Brenda failed to timely apprise him of certain school events and medical issues involving the children. Based on such evidence, we find no manifest error or abuse of discretion in the chancellor's determination that an adverse material change had occurred since the entry of the divorce judgment.

### B. *Albright* Analysis

¶30. After finding that a substantial and material adverse change had occurred, the chancellor considered the parties' evidence regarding the *Albright* factors. In child-custody determinations, "[t]he polestar consideration . . . is the best interest and welfare of the child." *Riley v. Heisinger*, 302 So. 3d 1243, 1255 (¶45) (Miss. Ct. App. 2020) (quoting *Albright*, 437 So. 2d at 1005). When evaluating a child's best interests, the chancellor must analyze the following:

> (1) the age, health, and sex of the child; (2) which parent has had "continuity of care"; (3) the parties' "parenting skills"; (4) the parties' "[]willingness and capacity to provide primary child care"; (5) the parties' employment responsibilities; (6) the parties' "physical and mental health and age"; (7) the "emotional ties of parent and child"; (8) the parties' "moral fitness"; (9) "the home, school[,] and community records of the child"; (10) the child's preference, if the child is at least twelve years old; (11) the stability of the home environment and employment of each party; and (12) any "other factors relevant to the parent-child relationship" or the child's best interest.

*Id.*

¶31. In conducting his *Albright* analysis, the chancellor found the following factors to be neutral: (1) the age, health, and sex of the children; (2) the parties' parenting skills; (3) the parties' willingness and capacity to provide primary child care; (4) the parties' employment

14

responsibilities; (5) the emotional ties between the children and each parent; and (6) the stability of each party's home environment and employment. The chancellor found that continuity of care favored Brenda. The chancellor also noted that while J.T. was not yet legally old enough to express a parent preference, T.T., who was now eighteen years old, had elected to remain with Brenda. Finally, the chancellor found that the following factors favored Tim: (1) the parties' physical and mental health and age; (2) the parties' moral fitness; and (3) the children's home, school, and community records. Other relevant factors the chancellor considered were his findings that (1) Brenda had failed to comply with the divorce judgment's joint legal-custody arrangements and had attempted to exclude Tim from being involved in the children's lives; (2) Brenda had interfered with Tim's visitation rights and had failed to work with him as to visits; (3) Brenda allowed a felon to reside in her home but was not married to him; (4) J.T. was struggling with his school grades, and Brenda had failed to inform Tim of the children's school-related issues; and (5) Brenda had failed to notify Tim of certain medical issues J.T. had experienced.

¶32. After conducting an *Albright* analysis, the chancellor determined that a custody modification was in J.T.'s best interests. The chancellor awarded Tim sole physical custody of J.T. and awarded Brenda visitation. Because T.T. was in his final year of high school and had elected to remain with Brenda, the chancellor determined that no custody modification was warranted with regard to T.T. The chancellor ordered the parties to continue sharing joint legal custody of both children. Due to the custody modification involving J.T., the chancellor reduced the amount of monthly child support that Tim paid to Brenda and allowed

15

Tim to claim J.T. as his dependent for tax purposes.

¶33.   On appeal, Brenda challenges the chancellor's findings regarding the children's home, school, and community records and other factors relevant to the parent-child relationship. In analyzing the children's home, school, and community records, the chancellor focused on J.T.'s academic performance, which had suffered significantly since the divorce, and on the increased number of school tardies and absences both children had accumulated. The chancellor placed great emphasis on the fact that these circumstances had developed while the children lived with Brenda, and he attributed these negative developments to Brenda's failure to sufficiently manage the children's school work and attendance. In discussing other factors relevant to the parent-child relationship, the chancellor reiterated much of the evidence considered in his finding that an adverse material change had occurred. He also considered Tim's extensive testimony that (1) Brenda refused to allow his visitation with the children if he arrived late due to a work conflict, even when he provided advance notice of the change; (2) Brenda failed to inform him when certain medical and school problems arose involving the children, which forced him to discover the issues from another source or through his own initiative; and (3) Brenda failed to comply with the joint legal-custody obligations she owed him.

¶34.   Upon review, we find that substantial credible evidence supported the chancellor's findings as to these factors. We recognize that "[t]he chancellor sits as fact-finder and [that] his conclusions regarding witness credibility and what weight and worth to assign to the testimony of the various witnesses are entitled to substantial deference." *Stewart v. Stewart*,

16

309 So. 3d 44, 89 (¶149) (Miss. Ct. App. 2020) (quoting *Gulfport Shopping Ctr. Inc. v. Durham*, 94 So. 3d 351, 356 (¶16) (Miss. Ct. App. 2012)). In light of the deferential standard we apply to the chancellor's findings, we find no manifest error or abuse of discretion in the chancellor's determination that a custody modification was in J.T.'s best interests. We therefore affirm the chancellor's grant of sole physical custody of J.T. to Tim.

### C. Income-Tax Deduction

¶35. After awarding Tim sole physical custody of J.T., the chancellor stated that Tim would also be allowed to claim J.T. as a dependent for income-tax purposes. On appeal, Brenda asks this Court to reverse the grant of the dependency exemption to Tim.

¶36. We review the award of tax exemptions for manifest error or abuse of discretion. *Thomas v. Thomas*, 281 So. 3d 1191, 1213 (¶77) (Miss. Ct. App. 2019). Here, the chancellor made no findings in awarding Tim the dependency tax exemption. We have recognized, however, that "there is no requirement that the chancellor make specific findings to support an award of tax exemptions. Indeed, the [supreme c]ourt [has] stated that 'many cases do not involve incomes or estates significant enough to justify this type of analysis.'" *Id.* at (¶78) (quoting *Louk v. Louk*, 761 So. 2d 878, 884 (¶18) (Miss. 2000)). "[W]hen there are no specific findings of fact, [the appellate c]ourt will assume that the trial court made determinations of fact sufficient to support its judgment." *Id.* (quoting *Century 21 Deep S. Props. Ltd. v. Corson*, 612 So. 2d 359, 367 (Miss. 1992)). We therefore "must look to the evidence and see what state of facts will justify the decree." *Id.* (quoting *Century 21 Deep S. Props. Ltd.*, 612 So. 2d at 367)).

17

¶37. The record reflects that Tim is the only income-earning parent since Brenda is on disability and has no earned income. Thus, the benefit of claiming J.T. as a dependent for tax purposes should be worth more to Tim. Further, even after modifying custody, the chancellor still required Tim to pay a higher amount of monthly child support to Brenda ($470 each month) than he ordered Brenda to pay to Tim ($172 each month). In addition, Tim will likely bear the greater cost of financially supporting J.T. now that Tim is the custodial parent. Based on such facts, we cannot say that the chancellor manifestly erred or abused his discretion by awarding Tim the dependency tax exemption for J.T.

## V. Contempt Petitions

¶38. Brenda challenges four of the chancellor's contempt rulings, three of which held her in contempt for her conduct and one of which denied her contempt action against Tim. We "review[] civil-contempt decisions for manifest error." *Stewart v. Stewart*, 309 So. 3d 44, 99 (¶193) (Miss. Ct. App. 2020) (quoting *Gary v. Gary*, 84 So. 3d 836, 839 (¶14) (Miss. Ct. App. 2012)). Although "[f]ailure to comply with a court order is prima facie evidence of contempt," the movant bears the burden to establish "a prima facie case that the alleged contemnor has not complied with the judgment." *Id.* (citations and internal quotation marks omitted). "[W]hether a party is in contempt is a question of fact to be decided on a case-by-case basis. A chancellor has substantial discretion in deciding contempt matters because of the chancellor's temporal and visual proximity to the litigants." *Riley*, 302 So. 3d at 1262 (¶80) (quoting *Voss v. Doughty*, 242 So. 3d 952, 958-59 (¶25) (Miss. Ct. App. 2018)). When "substantial credible evidence" supports a chancellor's contempt findings,

18

"[t]his Court will not reverse" the citation of contempt. *Id.* (quoting *Riley v. Riley*, 196 So. 3d 1159, 1162 (¶9) (Miss. Ct. App. 2016)).

## A. Brenda's Failure to Provide a Physician's Affidavit

¶39. Brenda missed a hearing scheduled for September 19, 2018. Her attorney informed the chancellor that Brenda's absence was due to illness. In three separate orders, the chancellor directed Brenda to provide both Tim's attorney and the court with documentation "that set out the need for her absence from the scheduled hearing." In the third order, entered October 2, 2018, the chancellor gave Brenda until 5 p.m. the following day to provide "a written report from a physician explaining her diagnosis and an opinion as to whether or not said diagnosis prevented her from appearing before this court on September 19, 2018 . . . ." On October 3, 2018, Brenda filed a "certificate to return to work." In his September 12, 2019 order, the chancellor concluded that Brenda's documentation failed to comply with his prior orders because (1) Brenda provided no physician's affidavit that explained her diagnosis or stated whether her diagnosis had prevented her attendance at the September 19, 2018 hearing, and (2) the certificate she filed was not signed by a physician.

¶40. "A party has an obligation to appear at the time set for trial." *McChester*, 300 So. 3d at 1040 (¶18). Uniform Chancery Court Rule 1.05 states:

> When any civil action has been set for, or adjourned to, a particular day or hour, all officers, parties, witnesses[,] and solicitors whose presence is necessary for the trial shall be present promptly at the time set. Any negligent or willful failure to obey this rule shall be punished by contempt.

¶41. Here, the chancellor afforded Brenda multiple opportunities to provide medical documentation that explained her absence from the September 19, 2018 hearing. The

19

chancellor determined, however, that the return-to-work certificate Brenda eventually filed failed to comply with his prior orders. The chancellor therefore concluded that Brenda had failed to sufficiently establish that her health issues had prevented her from attending the September 19, 2018 hearing. Because substantial credible evidence supports the chancellor's determination that Brenda was in contempt of his prior orders, we find this issue lacks merit.

## B. Brenda's Failure to Comply with Her Joint Legal-Custody Obligations

¶42. Mississippi Code Annotated section 93-5-24(5)(e) (Rev. 2018) provides:

"[J]oint legal custody" means that the parents or parties share the decision-making rights, the responsibilities[,] and the authority relating to the health, education[,] and welfare of a child. An award of joint legal custody obligates the parties to exchange information concerning the health, education[,] and welfare of the minor child, and to confer with one another in the exercise of decision-making rights, responsibilities[,] and authority.

¶43. Following hearings in July 2018, November 2018, and April 2019, the chancellor entered his September 12, 2019 order in which he held Brenda in contempt for violating the visitation schedule and her joint legal-custody obligations. In finding that Brenda had not complied with her obligations, the chancellor cited evidence of the following: Brenda's failure to identify Tim as a parent or emergency contact on the children's school-registration forms while listing Jones as their stepfather; Brenda's failure to advise Tim of the children's grades and school activities; Brenda's improper enrollment of J.T. in a different school district without Tim's knowledge; Brenda's failure to timely inform Tim of certain medical treatment for J.T.; and her failure to keep Tim informed "of any issues, problems[,] and/or health matters involving either child."

20

¶44. Several weeks after the April 2019 hearings, Brenda registered J.T. for the 2019-2020 school year. The evidence presented during the subsequent October 15, 2019 hearing showed that Brenda once again failed to identify Tim as a parent or emergency contact on J.T.'s school forms but listed Jones as an emergency contact. In his October 16, 2019 order, the chancellor found that Brenda's conduct constituted a new contempt matter. The chancellor therefore once again held Brenda in contempt and awarded Tim $600 in attorney's fees related to bringing the new contempt action.

¶45. The record contains substantial credible evidence to support the chancellor's finding that on multiple separate occasions Brenda failed to comply with her joint legal-custody obligations. The record also supports the chancellor's finding that Brenda's continued noncompliance following the April 2019 hearings constituted a new contempt action for which she should be fined. We therefore find no manifest error or abuse of discretion arising from either the chancellor's September 12, 2019 or October 16, 2019 orders holding Brenda in contempt for her noncompliance with the joint legal-custody obligations she owed Tim.

### C. Brenda's Contempt Claim Against Tim

¶46. Brenda contends that Tim trespassed on her property on a date that fell outside his scheduled visitation. She therefore argues that the chancellor erred by refusing to hold Tim in contempt. In his October 16, 2019 order, the chancellor found the hearing evidence had shown that the parties experienced some confusion as to whether a certain weekend qualified as Tim's visitation time under the visitation schedule. The chancellor concluded that the "confusion between the parties d[id] not rise to the level of contempt." Because we can find

21

no manifest error or abuse of discretion, we decline to reverse the chancellor's denial of Brenda's claim of contempt against Tim.

## VI.    Special Commissioner

¶47.    In her final assignment of error, Brenda contends the chancellor erred by appointing a special commissioner to search the parties' cell phones and to review their phone calls and text messages. After Jones's repeated failure to appear in court, Tim's attorney requested during the July 26, 2018 hearing that the chancellor appoint someone to review Brenda's cell phone. Tim's attorney explained he had reason to believe that Brenda had lied during her earlier testimony when she denied any knowledge of Jones's current whereabouts. Tim's attorney further asserted that he believed Brenda had been communicating with Jones during that day's hearing. Brenda's attorney objected to the search unless Tim also allowed a search of his cell phone. Tim's attorney agreed, and the chancellor ordered both parties to produce their cell phones. The chancellor appointed a special commissioner to review the parties' cell phones and to determine whether any witnesses had been warned not to attend that day's hearing. After the special chancellor completed her review, the chancellor asked for a summary about any phone calls and text messages the parties had sent or received earlier that day. Once the special commissioner completed her report, the chancellor allowed the parties to question her about her findings.

¶48.    From our review of the record, it appears that Brenda's attorney withdrew her objection to the cell-phone search once Tim agreed to also produce his cell phone. Following Tim's agreement to a search of his cell phone, Brenda's attorney did not renew her objection

to the search.  We therefore find Brenda has failed to preserve this issue for appeal.  *See*

*Dickerson v. State*, 175 So. 3d 8, 22-23 (¶50) (Miss. 2015).

## CONCLUSION

¶49.    Because we find the chancellor abused his discretion by denying Brenda's amended

Rule 60(b)(6) motion as untimely, we reverse the denial of her amended motion on that

ground.  We further remand this case so the chancellor can consider the parties' evidence

regarding Brenda's amended Rule 60(b)(6) claims and rule on the merits of those claims.

As to all other issues raised on appeal, we affirm.

¶50.    **AFFIRMED IN PART; REVERSED AND REMANDED IN PART.**

    **BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, McCARTY AND EMFINGER, JJ., CONCUR.**